**The below described is SIGNED.**



Dated: March 29, 2011

_____

R. KIMBALL MOSIER
U.S. Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>**PACIFIC DEVELOPMENT, L.C.,**<br><br>Debtor. | **Bankruptcy Case No. 10-22754**<br>**Chapter 11**<br><br>**Judge R. Kimball Mosier**<br><br>**(Filed Electronically)** |

### FINDINGS AND CONCLUSIONS REGARDING MOTION TO APPROVE THE SALE OF MODEL HOME TO GREG MELVEN

Upon the motion dated February 28, 2011 [Docket #115] (the "Motion")[1] of the debtor ("Debtor" or "Seller"), for entry of an order (the "Sale Order") under 11 U.S.C. § 363, and Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure, authorizing and approving the sale (the "Sale") of the Model Home, located at 1148 W. 1150 S., Payson, Utah County, Utah 84651, more particularly described as (the "Property"):

> Lot 12, Plat "A", HERITAGE VILLAGE SUBDIVISION, in the City of Payson, County of Utah, State of Utah, according to the official plat thereof on file in the office of the recorder of said county.  Together with any and all rights in and to the common area and facilities therein.

---

[1]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or the Agreement, as the case may be; as to any conflicts with respect to such terms, the meanings contained in the Agreement shall control over those in the Motion.

Parcel No.: 41-711-12.

free and clear of all liens, claims and encumbrances; the Court having reviewed and considered

the Motion, there being no objections thereto as further stated in the Certificate of Non

Opposition filed by the Debtor [Docket # 121], it appearing that notice of the Motion was good

and sufficient under the particular circumstances and that no other or further notice need be

given; it appearing that the relief requested in the Motion is in the best interests of the Debtor, its

estate, and other parties in interest; after due deliberation thereon; good cause appearing

therefore, and based upon the uncontroverted facts and representations set forth in the Motion to

Approve the Sale of Model Home to Greg Melven (filed on February 28, 2011, docket # 115),

the Court hereby FINDS AND DETERMINES AS FOLLOWS:

      A.     The Court's exercise of jurisdiction over this matter and over the property of

Debtor and its estate is proper pursuant to 28 U.S.C. §§ 1334 and 157.

      B.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).

      C.     Proper, timely, and adequate notice of the Motion and Sale has been provided in

accordance with Sections 102(1) and 363 of the Bankruptcy Code and Rules 2002, 6004, and

9014 of the Federal Rules of Bankruptcy Procedure; (ii) the form and manner of notice was

reasonable, sufficient, and appropriate under the circumstances and adequately apprised

interested parties of the terms and conditions of the Sale and the relationship between the Debtor

and the Buyer; and (iii) no other or further notice of the Motion or Sale is required.

      E.     A reasonable opportunity to object or to be heard with respect to the Motion and

the relief requested in the Motion has been afforded to all interested persons and entities.

2

FINDINGS AND CONCLUSIONS REGARDING MOTION TO APPROVE THE SALE OF MODEL HOME TO
GREG MELVEN

F.     As demonstrated by the Motion, the Debtor, has fairly and reasonably assessed the value of the property.

H.     No objections have been filed against the Motion.

I.     The Debtor has demonstrated sound business justification for the sale of the Property pursuant to Section 363(b) of the Bankruptcy Code in that the Debtor wishes to convert the Property to cash for payment of Estate obligations and the price submitted by the Buyer is the highest and best bid for the Property.

J.     The Real Estate Purchase Contract attached hereto as Exhibit "1" (the "Agreement") constitutes a valid and binding contract between the Debtor and Greg Melven ("Buyer").

L.     The Agreement was negotiated, proposed, and entered into by the Debtor and Buyer without collusion, in good faith, and from an arm's length bargaining position.  Neither the Debtor nor the Buyer has engaged in any conduct that would cause or permit the Agreement to be voided under Section 363(n) of the Bankruptcy Code.

M.     The Buyer did not have an undue advantage over the other potential buyers or bidders at any time.

N.     The Buyer is a third-party purchaser, unrelated to the Debtor.  The Buyer is not a successor-in-interest to the Debtor.

O.     The Buyer is a "good faith" purchaser as such term is used in Section 363(m) of the Bankruptcy Code, and, as such, is entitled to all of the protections afforded thereby.

FINDINGS AND CONCLUSIONS REGARDING MOTION TO APPROVE THE SALE OF MODEL HOME TO
GREG MELVEN

P.     The consideration provided by the Buyer for the Property pursuant to the Agreement (i) is fair and reasonable, (ii) is the highest or otherwise best offer for the Property, (iii) will provide a greater recovery for the Debtor's creditors and other interested parties than would be provided by any other practical alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

Q.     The transfer of the Property to the Buyer will be a legal, valid and effective transfer of the Property, and will vest the Buyer will all rights, title, and interest of the Debtor in the Property free and clear of all liens, interests, and encumbrances (except as provided in the Agreement), including, but not limited to, (i) the Notice of Interest of Tommie W. Sisk, recorded on January 27, 2010, (ii) the judgment of Oldcastle Precast, Inc. recorded on July 14, 2010, as entry no. 58381:2010, (iii) those that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of Debtor's or Buyer's interest in the Property, or any similar rights, (iv) those relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Property prior to closing of the Sale (the "Closing"), (v) all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership and all debts arising in any way in connection with any agreements, acts, or failures to act, of the Debtor or any of the Debtor's predecessors or affiliates, claims (as that term is defined in the Bankruptcy

FINDINGS AND CONCLUSIONS REGARDING MOTION TO APPROVE THE SALE OF MODEL HOME TO GREG MELVEN

Code), obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interest and matters of any kind and nature, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of these bankruptcy cases, and whether imposed by agreement, understanding, law, equity or otherwise, including but not limited to claims otherwise arising under doctrines of successor liability to the extent permitted by law, and (vi) liabilities for any claims against Debtor or any of their predecessors or affiliates of any kind or character arising prior to the Closing including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, *de facto* merger, or substantial continuity, whether known or unknown, now existing or hereafter arising, whether fixed or contingent, with respect to Debtor or any obligations of Debtor (collectively, "Interests").

R.    Buyer would not have entered into the Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtor, its estate, and its creditors, if the sale of the Property to Buyer was not free and clear of all Interests of any kind or nature whatsoever, or if Buyer would, or in the future could, be liable for any of the Interests.

S.    The Debtor may sell the Property free and clear of all Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in Section 363(f) of the Bankruptcy Code has been satisfied. Those holders of Interests in the Property who did not object to the Motion are deemed to have consented to the Sale pursuant to 11 U.S.C. § 363(f)(2).

FINDINGS AND CONCLUSIONS REGARDING MOTION TO APPROVE THE SALE OF MODEL HOME TO
GREG MELVEN

T.     No agreement prohibited by Section 363(n) of the Bankruptcy Code exists with respect to the Buyer.

U.     The sale of the Property to the Buyer is a reasonable and valid exercise of the Debtor's business judgment and is otherwise appropriate under section 363 of the Bankruptcy Code. The relief requested in the Motion with respect to the Property is in the best interests of the Debtor's estate and its creditors.

V.     It is necessary and appropriate for the Court to retain jurisdiction to interpret and enforce the terms of the Sale Order and to adjudicate, if necessary, any and all disputes concerning any provision hereof.

W.     Pursuant to Section 363(b) of the Bankruptcy Code, the Debtor is authorized to perform its obligations under and comply with the terms of the Agreement, and consummate the Sale, pursuant to and in accordance with the terms and conditions of the Agreement.

X.     The Debtor is authorized to execute and deliver, and empowered to perform under, consummate and implement, the Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement, and to take all further actions as may be requested by Buyer for the purpose of assigning, transferring, granting, conveying and conferring to Buyer or reducing to possession, the Property, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Agreement, including payment of all property taxes, payment to Central Bank in the amount of $231,500, payment to Vinyl Industries, LLC in the amount of $815.00, payment to Central Utah

6

Overhead Door, Co. in the amount of $1,350.00, and payment of title insurance and other fees incidental to the Sale.

Y.     This Sale Order and the Agreement shall be binding in all respects upon all creditors (whether known or unknown) of the Debtor, all successors and assigns of Buyer, Debtor and its affiliates, subsidiaries and parent corporations, and any subsequent trustees appointed in Debtor's chapter 11 case or upon a conversion to chapter 7 under the Bankruptcy Code, and shall not be subject to rejection.

Z.     The Agreement and any related agreements, documents, or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court, provided such modification is not material.  The Debtor is authorized to take all commercially reasonable actions to effectuate the closing of the Sale to accommodate the schedules of both parties, to occur within the timeframe stated in the Agreement.

AA.     Except as expressly permitted or otherwise specifically provided by the Agreement, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade and other creditors, holding Interests of any kind or nature whatsoever against or in the Debtor or the Property (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtor, the Property, or the transfer of the Property to Buyer, hereby are forever

FINDINGS AND CONCLUSIONS REGARDING MOTION TO APPROVE THE SALE OF MODEL HOME TO
GREG MELVEN

barred, estopped, and permanently enjoined from asserting against Buyer, its successors or assigns, its property, or the Property, such persons' or entities' Interests.

BB.    Nothing in the Agreement shall be construed to release or nullify any liability to any governmental entity under police or regulatory requirements that any entity would be subject to as the owner or operator of Property after the date of entry of this Sale Order.

CC.    If any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing Interests in the Debtor or the Property shall not have delivered to Debtor prior to Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Interests which the person or entity has with respect to the Debtor or the Property or otherwise, then (a) Debtor is hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Property, and (b) Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests in the Property of any kind or nature whatsoever.

Dated this ____ day of March, 2011.

[end of order]

8

FINDINGS AND CONCLUSIONS REGARDING MOTION TO APPROVE THE SALE OF MODEL HOME TO
GREG MELVEN

## CLERK'S CERTIFICATE OF SERVICE

I hereby certify that on this ___ day of _____, 20__, I caused true and correct

copies of the foregoing **FINDINGS AND CONCLUSIONS REGARDING MOTION TO**

**APPROVE THE SALE OF MODEL HOME GREG MELVEN,** to the individuals and

entities identified below:

Blake D. Miller
James W. Anderson
Miller Guymon, P.C.
165 S. Regent St.
Salt Lake City, Utah  84111

J. Thomas Beckett
Parsons Behle & Latimer
201 South Main Street, Suite 1800
P.O. Box 45898
Salt Lake City, Utah  84145-0898

Peter J. Kuhn
US Trustees Office
Ken Garff Bldg.
405 South Main Street, Suite 300
Salt Lake City, Utah  84111


_____
Bankruptcy Clerk

FINDINGS AND CONCLUSIONS REGARDING MOTION TO APPROVE THE SALE OF MODEL HOME TO
GREG MELVEN

**Exhibit "1"—Agreement**

FINDINGS AND CONCLUSIONS REGARDING MOTION TO APPROVE THE SALE OF MODEL HOME TO
GREG MELVEN

 Utah Association REALTORS

# REAL ESTATE PURCHASE CONTRACT



This is a legally binding Real Estate Purchase Contract ("REPC"). Utah law requires real estate licensees to use this form. Buyer and Seller, however, may agree to alter or delete its provisions or to use a different form. If you desire legal or tax advice, consult your attorney or tax advisor.

## OFFER TO PURCHASE AND EARNEST MONEY DEPOSIT

On this <u>31st day of January, 2011</u> ("Offer Reference Date") <u>Greg Melven</u> ("Buyer") offers to purchase from <u>Pacific Development</u> ("Seller") the Property described below and [ ] delivers to the Buyer's Brokerage with this offer, or [X] agrees to deliver no later than four (4) calendar days after Acceptance (as defined in Section 23), Earnest Money in the amount of $<u>750.00</u> in the form of <u>Personal Check</u>. After Acceptance of the REPC by Buyer and Seller, and receipt of the Earnest Money by the Brokerage, the Brokerage shall have four (4) calendar days in which to deposit the Earnest Money into the Brokerage Real Estate Trust Account.

Buyer's Brokerage: <u>Unrepresented Buyer</u>                    Phone: <u>801-822-8275</u>
Received by: _____    on _____ (Date)
(Signature above acknowledges receipt of Earnest Money)

### OTHER PROVISIONS

1. **PROPERTY:** <u>1148 W 1150 S, Payson, Utah County, UT 84651</u> also described as: <u>Tax ID: 41-711-0012 (or) MLS #1006981</u> City of <u>Payson</u>, County of <u>Utah</u>, State of Utah, Zip <u>84651</u> (the "Property"). Any reference below to the term "Property" shall include the Property described above, together with the included Items and water rights/water shares, if any, referenced in Sections 1.1, 1.2 and 1.4.

1.1 **Included Items.** Unless excluded herein, this sale includes the following items if presently owned and in place on the Property: plumbing, heating, air conditioning fixtures and equipment; ovens, ranges and hoods; cook tops; dishwashers; ceiling fans; water heaters; light fixtures and bulbs; bathroom fixtures and bathroom mirrors; curtains, draperies, rods, window blinds and shutters; window and door screens; storm doors and windows; awnings; satellite dishes; affixed carpets; automatic garage door openers and accompanying transmitters; security system; fencing and any landscaping.

1.2 **Other Included Items.** The following items that are presently owned and in place on the Property have been left for the convenience of the parties and are also included in this sale (check applicable box): [ ] washers [ ] dryers [ ] refrigerators [ ] water softeners [ ] microwave ovens [ ] other (specify) <u>Fireplace Equipment; Microwave; Tv Antenna</u>

The above checked items shall be conveyed to Buyer under separate bill of sale with warranties as to title.

1.3 **Excluded Items.** The following items are excluded from this sale: _____

1.4 **Water Service.** The Purchase Price for the Property shall include all water rights/water shares, if any, that are the legal source for Seller's current culinary water service and irrigation water service, if any, to the Property. The water rights/water shares will be conveyed or otherwise transferred to Buyer at Closing by applicable deed or legal instruments. The following water rights/water shares, if applicable, are specifically excluded from this sale: _____

2. **PURCHASE PRICE.** The purchase price for the Property is $<u>235000.00</u>. Except as provided in this Section, the Purchase Price shall be paid as provided in Sections 2(a) through 2(d) below. Any amounts shown in 2(b) and 2(d) may be adjusted as deemed necessary by Buyer and the Lender.

| | |
|---|---|
| $<u>750.00</u> | (a) Earnest Money Deposit. Under certain conditions described in the REPC, this deposit may become totally non refundable. |
| $<u>100% of purchase price</u> | (b) New Loan. Buyer may apply for mortgage loan financing (the "Loan") on terms acceptable to Buyer. If an FHA/VA loan applies, see attached FHA/VA Loan Addendum. |
| $_____ | (c) Seller Financing (see attached Seller Financing Addendum) |
| $_____ | (d) Balance of Purchase Price in Cash at Settlement |
| $<u>235000.00</u> | PURCHASE PRICE. Total of lines (a) through (d) |

3. **SETTLEMENT AND CLOSING.**

3.1 **Settlement.** Settlement shall take place no later than the Settlement Deadline referenced in Section 24(d), or as otherwise mutually agreed by Buyer and Seller in writing. "Settlement" shall occur only when all of the following have been

Page 1 of 6                Buyer's Initials _____ Date _1/31/20__ Seller's Initials _____ Date _2-3-11_

completed: (a) Buyer and Seller have signed and delivered to each other or to the escrow/closing office all documents required by the REPC, by the Lender, by the title insurance and escrow/closing offices, by written escrow instructions (including any split closing instructions, if applicable), or by applicable law; (b) any monies required to be paid by Buyer or Seller under these documents (except for the proceeds of any new loan) have been delivered by Buyer or Seller to the other party, or to the escrow/closing office, in the form of cash, wire transfer, cashier's check, or other form acceptable to the escrow/closing office.

3.2 Prorations. All prorations, including, but not limited to, homeowner's association dues, property taxes for the current year, rents, and interest on assumed obligations, if any, shall be made as of the Settlement Deadline referenced in Section 24(d), unless otherwise agreed to in writing by the parties. Such writing could include the settlement statement. The provisions of this Section 3.2 shall survive Closing.

3.3 Special Assessments. Any assessments for capital improvements as approved by the HOA (pursuant to HOA governing documents) or as assessed by a municipality or special improvement district, prior to the Settlement Deadline shall be paid for by: [X] Seller [ ] Buyer [ ] Split Equally Between Buyer and Seller [ ] Other (explain) _____. The provisions of this Section 3.3 shall survive Closing.

3.4 Fees/Costs/Payment Obligations. Unless otherwise agreed to in writing, Seller and Buyer shall each pay one-half (½) of the fee charged by the escrow/closing office for its services in the settlement/closing process. Tenant deposits (including, but not limited to, security deposits, cleaning deposits and prepaid rents) shall be paid or credited by Seller to Buyer at Settlement. Buyer agrees to be responsible for homeowners' association and private and public utility service transfer fees, if any, and all utilities and other services provided to the Property after the Settlement Deadline. The escrow/closing office is authorized and directed to withhold from Seller's proceeds at Closing, sufficient funds to pay off on Seller's behalf all mortgages, trust deeds, judgments, mechanic's liens, tax liens and warrants. The provisions of this Section 3.4 shall survive Closing.

3.5 Closing. For purposes of the REPC, "Closing" means that: (a) Settlement has been completed; (b) the proceeds of any new loan have been delivered by the Lender to Seller or to the escrow/closing office; and (c) the applicable Closing documents have been recorded in the office of the county recorder. The actions described in 3.5 (b) and (c) shall be completed within four calendar days after Settlement.

4. POSSESSION. Seller shall deliver physical possession of the Property to Buyer as follows: [X] Upon Closing; [ ] ___ Hours after Closing; [ ] ___ Calendar Days after Closing. Any contracted rental of the Property prior to or after Closing, between Buyer and Seller, shall be by separate written agreement. Seller and Buyer shall each be responsible for any insurance coverage each party deems necessary for the Property including any personal property and belongings. Seller agrees to deliver the Property to Buyer in broom-clean condition and free of debris and personal belongings. Any Seller or tenant moving-related damage to the Property shall be repaired at Seller's expense. The provisions of this Section 4 shall survive Closing.

5. CONFIRMATION OF AGENCY DISCLOSURE. Buyer and Seller acknowledge prior written receipt of agency disclosure provided by their respective agent that has disclosed the agency relationships confirmed below. At the signing of the REPC:

Seller's Agent Josh Winn & Steven Bond , represents [X] Seller [ ] both Buyer and Seller as a Limited Agent;

Seller's Brokerage Re/Max Results LLC - Provo, represents [X] Seller [ ] both Buyer and Seller as a Limited Agent;

Buyer's Agent _____, represents [ ] Buyer [ ] both Buyer and Seller as a Limited Agent;

Buyer's Brokerage _____, represents [ ] Buyer [ ] both Buyer and Seller as a Limited Agent.

6. TITLE & TITLE INSURANCE.

6.1 Title to Property. Seller represents that Seller has fee title to the Property and will convey marketable title to the Property to Buyer at Closing by general warranty deed. Buyer does agree to accept title to the Property subject to the contents of the Commitment for Title Insurance (the "Commitment") provided by Seller under Section 7, and as reviewed and approved by Buyer under Section 8. Buyer also agrees to accept title to the Property subject to any existing leases, rental and property management agreements affecting the Property not expiring prior to Closing which were provided to Buyer pursuant to Section 7(e). The provisions of this Section 6.1 shall survive Closing.

6.2 Title Insurance. At Settlement, Seller agrees to pay for and cause to be issued in favor of Buyer, through the title insurance agency that issued the Commitment (the "Issuing Agent"), the most current version of the *ALTA Homeowner's Policy of Title Insurance* (the "Homeowner's Policy"). If the Homeowner's Policy is not available through the Issuing Agent, Buyer and Seller further agree as follows: (a) Seller agrees to pay for the Homeowner's Policy if available through any other title insurance agency selected by Buyer; (b) if the Homeowner's Policy is not available either through the Issuing Agent or any other title insurance agency, then Seller agrees to pay for, and Buyer agrees to accept, the most current available version of an *ALTA Owner's Policy of Title Insurance* ("Standard Coverage Owner's Policy") available through the Issuing Agent.

7. SELLER DISCLOSURES. No later than the Seller Disclosure Deadline referenced in Section 24(a), Seller shall provide to Buyer the following documents in hard copy or electronic format which are collectively referred to as the "Seller Disclosures":

(a) a written Seller property condition disclosure for the Property, completed, signed and dated by Seller as provided in Section 10.3;

(b) a Commitment for Title Insurance as referenced in Section 6;

Page 2 of 6                    Buyer's Initials _____ Date 1/31/11 Seller's Initials _____ Date 3-11

(c) a copy of any restrictive covenants (CC&R's), rules and regulations affecting the Property;
(d) a copy of the most recent minutes, budget and financial statement for the homeowners' association, if any;
(e) a copy of any lease, rental, and property management agreements affecting the Property not expiring prior to Closing;
(f) evidence of any water rights and/or water shares referenced in Section 1.4;
(g) written notice of any claims and/or conditions known to Seller relating to environmental problems and building or zoning code violations; and
(h) Other (specify) _____

## 8. BUYER'S CONDITIONS OF PURCHASE.

### 8.1 DUE DILIGENCE CONDITION.

Buyer's obligation to purchase the Property: [X] IS [ ] IS NOT conditioned upon Buyer's Due Diligence as defined in this Section 8.1(a) below. This condition is referred to as the "Due Diligence Condition." If checked in the affirmative, Sections 8.1(a) through 8.1(c) apply; otherwise they do not.

(a) Due Diligence Items. Buyer's Due Diligence shall consist of Buyer's review and approval of the contents of the Seller Disclosures referenced in Section 7, and any other tests, evaluations and verifications of the Property deemed necessary or appropriate by Buyer, such as: the physical condition of the Property; the existence of any hazardous substances, environmental issues or geologic conditions; the square footage or acreage of the land and/or improvements; the condition of the roof, walls, and foundation; the condition of the plumbing, electrical, mechanical, heating and air conditioning systems and fixtures; the condition of all appliances; the costs and availability of homeowners' insurance and flood insurance, if applicable; water source, availability and quality; the location of property lines; regulatory use restrictions or violations; fees for services such as HOA dues, municipal services, and utility costs; convicted sex offenders residing in proximity to the Property; and any other matters deemed material to Buyer in making a decision to purchase the Property. Unless otherwise provided in the REPC, all of Buyer's Due Diligence shall be paid for by Buyer and shall be conducted by individuals or entities of Buyer's choice. Seller agrees to cooperate with Buyer's Due Diligence. Buyer agrees to pay for any damage to the Property resulting from any such inspections or tests during the Due Diligence.

(b) Buyer's Right to Cancel or Resolve Objections. If Buyer determines, in Buyer's sole discretion, that the results of the Due Diligence are unacceptable, Buyer may either: (i) no later than the Due Diligence Deadline referenced in Section 24(b), cancel the REPC by providing written notice to Seller, whereupon the Earnest Money Deposit shall be released to Buyer without the requirement of further written authorization from Seller; or (ii) no later than the Due Diligence Deadline referenced in Section 24(b), resolve in writing with Seller any objections Buyer has arising from Buyer's Due Diligence.

(c) Failure to Cancel or Resolve Objections. If Buyer fails to cancel the REPC or fails to resolve in writing any objections Buyer has arising from Buyer's Due Diligence, as provided in Section 8.1(b), Buyer shall be deemed to have waived the Due Diligence Condition.

### 8.2 APPRAISAL CONDITION.

Buyer's obligation to purchase the Property: [X] IS [ ] IS NOT conditioned upon the Property appraising for not less than the Purchase Price. This condition is referred to as the "Appraisal Condition." If checked in the affirmative, Sections 8.2(a) and 8.2(b) apply; otherwise they do not.

(a) Buyer's Right to Cancel. If after completion of an appraisal by a licensed appraiser, Buyer receives written notice from the Lender or the appraiser that the Property has appraised for less than the Purchase Price (a "Notice of Appraised Value"), Buyer may cancel the REPC by providing written notice to Seller (with a copy of the Notice of Appraised Value) no later than the Financing & Appraisal Deadline referenced in Section 24(c); whereupon the Earnest Money Deposit shall be released to Buyer without the requirement of further written authorization from Seller.

(b) Failure to Cancel. If the REPC is not cancelled as provided in this section 8.2, Buyer shall be deemed to have waived the Appraisal Condition.

### 8.3 FINANCING CONDITION.

Buyer's obligation to purchase the property: [X] IS [ ] IS NOT conditioned upon Buyer obtaining the Loan referenced in Section 2(b). This condition is referred to as the "Financing Condition." If checked in the affirmative, Sections 8.3(a) and 8.3(b) apply; otherwise they do not. If the Financing Condition applies, Buyer agrees to work diligently and in good faith to obtain the Loan.

(a) Buyer's Right to Cancel Before the Financing & Appraisal Deadline. If Buyer, in Buyer's sole discretion, is not satisfied with the terms and conditions of the Loan, Buyer may cancel the REPC by providing written notice to Seller no later than the Financing & Appraisal Deadline referenced in Section 24(c); whereupon the Earnest Money Deposit shall be released to Buyer without the requirement of further written authorization from Seller.

(b) Buyer's Right to Cancel After the Financing & Appraisal Deadline. If after expiration of the Financing & Appraisal Deadline referenced in Section 24(c), Buyer fails to obtain the Loan, meaning that the proceeds of the Loan have not been delivered by the Lender to Seller or to the escrow/closing office as required under Section 3.5 of the REPC, then Buyer or Seller may cancel the REPC by providing written notice to the other party; whereupon the Earnest Money Deposit, or Deposits, if applicable (see Section 8.4 below), shall be released to Seller without the requirement of further written authorization from Buyer. In the event of such cancellation, Seller agrees to accept as Seller's exclusive remedy, the Earnest Money Deposit, or Deposits, if applicable, as liquidated damages. Buyer and Seller agree that liquidated damages would be difficult and impractical to calculate, and the Earnest Money Deposit, or Deposits, if applicable, is a fair and reasonable estimate of Seller's damages in the event Buyer fails to obtain the Loan.

### 8.4 ADDITIONAL EARNEST MONEY DEPOSIT.

If the REPC has not been previously canceled by Buyer as provided

Buyer's Initials _____ Date 1/31/01 Seller's Initials _____ Date 2-3-11

in Sections 8.1, 8.2 or 8.3(a), then no later than the Due Diligence Deadline referenced in Section 24(b), or the Financing & Appraisal Deadline referenced in Section 24(c), whichever is later, Buyer: [ ] WILL [X] WILL NOT deliver to the Buyer's Brokerage, an Additional Earnest Money Deposit in the amount of $_____. The Earnest Money Deposit and the Additional Earnest Money Deposit, if applicable, are sometimes referred to herein as the "Deposits". The Earnest Money Deposit and the Additional Earnest Money Deposit, or Deposits, if applicable, shall be credited toward the Purchase Price at Closing.

**9. ADDENDA.** There [X] ARE [ ] ARE NOT addenda to the REPC containing additional terms. If there are, the terms of the following addenda are incorporated into the REPC by this reference: [X] Addendum No. ONE [ ] Seller Financing Addendum [X] FHA/VA Loan Addendum [ ] Lead-Based Paint Disclosure & Acknowledgement (in some transactions this disclosure is required by law) [X] Other (specify) Short Sale Addendum _____

**10. HOME WARRANTY PLAN / AS-IS CONDITION OF PROPERTY.**
    **10.1 Home Warranty Plan.** A one-year Home Warranty Plan [X] WILL [ ] WILL NOT be included in this transaction. If included, the Home Warranty Plan shall be ordered by [ ] Buyer [X] Seller and shall be issued by a company selected by [ ] Buyer [X] Seller. The cost of the Home Warranty Plan shall not exceed $500.00 __ and shall be paid for at Settlement by [ ] Buyer [X] Seller.
    **10.2 Condition of Property/Buyer Acknowledgements.** Buyer acknowledges and agrees that in reference to the physical condition of the Property: (a) Buyer is purchasing the Property in its "As-Is" condition without expressed or implied warranties of any kind; (b) Buyer shall have, during Buyer's Due Diligence as referenced in Section 8.1, an opportunity to completely inspect and evaluate the condition of the Property; and (c) if based on the Buyer's Due Diligence, Buyer elects to proceed with the purchase of the Property, Buyer is relying wholly on Buyer's own judgment and that of any contractors or inspectors engaged by Buyer to review, evaluate and inspect the Property.
    **10.3 Condition of Property/Seller Acknowledgements.** Seller acknowledges and agrees that in reference to the physical condition of the Property, Seller agrees to: (a) disclose in writing to Buyer defects in the Property known to Seller that materially affect the value of the Property that cannot be discovered by a reasonable inspection by an ordinary prudent Buyer; (b) carefully review, complete, and provide to Buyer a written Seller property condition disclosure as stated in section 7(a); and (c) deliver the Property to Buyer in substantially the same general condition as it was on the date of Acceptance, as defined in Section 23, ordinary wear and tear excepted. The provisions of Sections 10.2 and 10.3 shall survive Closing.

**11. FINAL PRE-SETTLEMENT WALK-THROUGH INSPECTION.**
    **11.1 Walk-Through Inspection.** No earlier than seven (7) calendar days prior to Settlement, and upon reasonable notice and at a reasonable time, Buyer may conduct a final pre-Settlement walk-through inspection of the Property to determine only that the Property is "as represented," meaning that the items referenced in Sections 1.1, 1.2 and 8.1(b)(ii) ("the items") are respectively present, repaired or corrected as agreed. The failure to conduct a walk-through inspection or to claim that an item is not as represented shall not constitute a waiver by Buyer of the right to receive, on the date of possession, the items as represented. If the items are not as represented, Seller agrees to cause all applicable items to be corrected, repaired or replaced (the "Work") prior to the Settlement Deadline referenced in Section 24(d).
    **11.2 Escrow to Complete the Work.** If, as of Settlement, the Work has not been completed, then Buyer and Seller agree to withhold in escrow at Settlement a reasonable amount agreed to by Seller, Buyer (and Lender, if applicable), sufficient to pay for completion of the Work. If the Work is not completed within thirty (30) calendar days after the Settlement Deadline, the amount so escrowed may, subject to Lender's approval, be released to Buyer as liquidated damages for failure to complete the Work. The provisions of this Section 11.2 shall survive Closing.

**12. CHANGES DURING TRANSACTION.** Seller agrees that from the date of Acceptance until the date of Closing, none of the following shall occur without the prior written consent of Buyer: (a) no changes in any leases, rental or property management agreements shall be made; (b) no new lease, rental or property management agreements shall be entered into; (c) no substantial alterations or improvements to the Property shall be made or undertaken; (d) no further financial encumbrances to the Property shall be made, and (e) no changes in the legal title to the Property shall be made.

**13. AUTHORITY OF SIGNERS.** If Buyer or Seller is a corporation, partnership, trust, estate, limited liability company or other entity, the person signing the REPC on its behalf warrants his or her authority to do so and to bind Buyer and Seller.

**14. COMPLETE CONTRACT.** The REPC together with its addenda, any attached exhibits, and Seller Disclosures (collectively referred to as the "REPC"), constitutes the entire contract between the parties and supersedes and replaces any and all prior negotiations, representations, warranties, understandings or contracts between the parties whether verbal or otherwise. The REPC cannot be changed except by written agreement of the parties.

**15. MEDIATION.** Any dispute relating to the REPC arising prior to or after Closing: [ ] SHALL [X] MAY AT THE OPTION OF THE PARTIES first be submitted to mediation. Mediation is a process in which the parties meet with an impartial person who helps to resolve the dispute informally and confidentially. Mediators cannot impose binding decisions. The parties to the dispute must agree before any settlement is binding. The parties will jointly appoint an acceptable mediator and share equally in the cost

Buyer's Initials 27m Date 1/21/2011 Seller's Initials ___ Date 2-3-11

of such mediation. If mediation fails, the other procedures and remedies available under the REPC shall apply. Nothing in this Section 15 prohibits any party from seeking emergency legal or equitable relief, pending mediation. The provisions of this Section 15 shall survive Closing.

**16. DEFAULT.**

16.1 **Buyer Default.** If Buyer defaults, Seller may elect one of the following remedies: (a) cancel the REPC and retain the Earnest Money Deposit, or Deposits, if applicable, as liquidated damages; (b) maintain the Earnest Money Deposit, or Deposits, if applicable, in trust and sue Buyer to specifically enforce the REPC; or (c) return the Earnest Money Deposit, or Deposits, if applicable, to Buyer and pursue any other remedies available at law.

16.2 **Seller Default.** If Seller defaults, Buyer may elect one of the following remedies: (a) cancel the REPC, and in addition to the return of the Earnest Money Deposit, or Deposits, if applicable, Buyer may elect to accept from Seller, as liquidated damages, a sum equal to the Earnest Money Deposit, or Deposits, if applicable; or (b) maintain the Earnest Money Deposit, or Deposits, if applicable, in trust and sue Seller to specifically enforce the REPC; or (c) accept a return of the Earnest Money Deposit, or Deposits, if applicable, and pursue any other remedies available at law. If Buyer elects to accept liquidated damages, Seller agrees to pay the liquidated damages to Buyer upon demand.

**17. ATTORNEY FEES AND COSTS/GOVERNING LAW.** In the event of litigation or binding arbitration to enforce the REPC, the prevailing party shall be entitled to costs and reasonable attorney fees. However, attorney fees shall not be awarded for participation in mediation under Section 15. This contract shall be governed by and construed in accordance with the laws of the State of Utah. The provisions of this Section 17 shall survive Closing.

**18. NOTICES.** Except as provided in Section 23, all notices required under the REPC must be: (a) in writing; (b) signed by the Buyer or Seller giving notice; and (c) received by the Buyer or the Seller, or their respective agent, or by the brokerage firm representing the Buyer or Seller, no later than the applicable date referenced in the REPC.

**19. NO ASSIGNMENT.** The REPC and the rights and obligations of Buyer hereunder, are personal to Buyer. The REPC may not be assigned by Buyer without the prior written consent of Seller. Provided, however, the transfer of Buyer's interest in the REPC to any business entity in which Buyer holds a legal interest, including, but not limited to, a family partnership, family trust, limited liability company, partnership, or corporation (collectively referred to as a "Permissible Transfer"), shall not be treated as an assignment by Buyer that requires Seller's prior written consent. Furthermore, the inclusion of "and/or assigns" or similar language on the line identifying Buyer on the first page of the REPC shall constitute Seller's written consent only to a Permissible Transfer.

**20. INSURANCE & RISK OF LOSS.**

20.1 **Insurance Coverage.** As of Closing, Buyer shall be responsible to obtain casualty and liability insurance coverage on the Property in amounts acceptable to Buyer and Buyer's Lender, if applicable.

20.2 **Risk of Loss.** If prior to Closing, any part of the Property is damaged or destroyed by fire, vandalism, flood, earthquake, or act of God, the risk of such loss or damage shall be borne by Seller; provided however, that if the cost of repairing such loss or damage would exceed ten percent (10%) of the Purchase Price referenced in Section 2, either Seller or Buyer may elect to cancel the REPC by providing written notice to the other party, in which instance the Earnest Money Deposit, or Deposits, if applicable, shall be returned to Buyer.

**21. TIME IS OF THE ESSENCE.** Time is of the essence regarding the dates set forth in the REPC. Extensions must be agreed to in writing by all parties. Unless otherwise explicitly stated in the REPC: (a) performance under each Section of the REPC which references a date shall absolutely be required by 5:00 PM Mountain Time on the stated date; and (b) the term "days" and "calendar days" shall mean calendar days and shall be counted beginning on the day following the event which triggers the timing requirement (e.g. Acceptance). Performance dates and times referenced herein shall not be binding upon title companies, lenders, appraisers and others not parties to the REPC, except as otherwise agreed to in writing by such non-party.

**22. ELECTRONIC TRANSMISSION AND COUNTERPARTS.** Electronic transmission (including email and fax) of a signed copy of the REPC, any addenda and counteroffers, and the retransmission of any signed electronic transmission shall be the same as delivery of an original. The REPC and any addenda and counteroffers may be executed in counterparts.

**23. ACCEPTANCE.** "Acceptance" occurs only when all of the following have occurred: (a) Seller or Buyer has signed the offer or counteroffer where noted to indicate acceptance; and (b) Seller or Buyer or their agent has communicated to the other party or to the other party's agent that the offer or counteroffer has been signed as required.

Buyer's Initials _____ Date 1/31/201  Seller's Initials _____ Date 2-3-11

24. CONTRACT DEADLINES. Buyer and Seller agree that the following deadlines shall apply to the REPC:

(a) Seller Disclosure Deadline     See Short Sale Addendum     (Date)
(b) Due Diligence Deadline     See Short Sale Addendum     (Date)
(c) Financing & Appraisal Deadline     See Short Sale Addendum     (Date)
(d) Settlement Deadline     See Short Sale Addendum     (Date)

25. OFFER AND TIME FOR ACCEPTANCE. Buyer offers to purchase the Property on the above terms and conditions. If Seller does not accept this offer by: 6_ : 00 [ ] AM [X] PM Mountain Time on February 04, 2011 (Date), this offer shall lapse; and the Brokerage shall return any Earnest Money Deposit to Buyer.

_Greg Melven_  1/31/2011
(Buyer's Signature)     (Offer Date)     (Buyer's Signature)     (Offer Date)

Greg Melven _____     _____     801.822.8725
(Buyer's Names) (PLEASE PRINT)     (Notice Address)     (Zip Code)     (Phone)

_____     _____     _____
(Buyer's Names) (PLEASE PRINT)     (Notice Address)     (Zip Code)     (Phone)

### ACCEPTANCE/COUNTEROFFER/REJECTION

CHECK ONE:

[ ] ACCEPTANCE OF OFFER TO PURCHASE: Seller Accepts the foregoing offer on the terms and conditions specified above.

[X] COUNTEROFFER: Seller presents for Buyer's Acceptance the terms of Buyer's offer subject to the exceptions or modifications as specified in the attached ADDENDUM NO. 3

[ ] REJECTION: Seller rejects the foregoing offer.

_____  2-3-11
(Seller's Signature)     (Date)     (Time)     (Seller's Signature)     (Date)     (Time)
Pacific Development
(Seller's Names) (PLEASE PRINT)     (Notice Address)     (Zip Code)     (Phone)

_____     _____     _____
(Seller's Names) (PLEASE PRINT)     (Notice Address)     (Zip Code)     (Phone)

THIS FORM APPROVED BY THE UTAH REAL ESTATE COMMISSION AND THE OFFICE OF THE UTAH ATTORNEY GENERAL, EFFECTIVE AUGUST 27, 2008. IT REPLACES AND SUPERSEDES ALL PREVIOUSLY APPROVED VERSIONS OF THIS FORM.

Buyer's Initials _GYM_  Date 1/31/2011  Seller's Initials _____  Date 2-3-11

 Utah Association REALTORS®

## UNREPRESENTED BUYER DISCLOSURE

 EQUAL HOUSING OPPORTUNITY

This disclosure form is not a contract. Signing it does not create any relationship between you and the real estate agent who has also signed.

NAME OF BUYER: Greg Melven _____ (the "Buyer")

NAME OF SELLER: Pacific Development _____ (the "Seller")

LOCATION OF PROPERTY: 1148 W 1150 S Payson, UT 84651 _____ (the "Property")

AGENT REPRESENTING SELLER: Josh Winn & Steve Bond _____ (the "Agent")

BROKERAGE REPRESENTING SELLER: Re/Max Results LLC - Provo _____ (the "Company")

WHEN YOU ENTER INTO A DISCUSSION WITH A REAL ESTATE AGENT REGARDING A POTENTIAL REAL ESTATE TRANSACTION, YOU SHOULD, FROM THE OUTSET, UNDERSTAND WHO THE REAL ESTATE AGENT IS REPRESENTING IN THAT TRANSACTION. WHAT FOLLOWS IS A BRIEF BUT VERY IMPORTANT EXPLANATION REGARDING AGENCY RELATIONSHIPS AND THE REAL ESTATE AGENTS INVOLVED IN THIS TRANSACTION.

### SELLER'S AGENT

A real estate agent who lists a seller's property for sale ("Seller's Agent"), acts as the agent for the seller only, and has fiduciary duties of loyalty, full disclosure, confidentiality and reasonable care to that seller. In practical terms, the seller hires a Seller's Agent to locate a buyer and negotiate a transaction with terms favorable to the seller. Although the Seller's Agent has these fiduciary duties to the seller, the Seller's Agent is, by law, responsible to all prospective buyers to treat them with honesty, fair dealing, and with good faith.

### BUYER'S AGENT

A real estate agent that acts as agent for the buyer only ("Buyer's Agent") has the same fiduciary duties to that buyer that a Seller's Agent has to the seller. In practical terms, the buyer hires a Buyer's Agent to locate a suitable property and negotiate a transaction with terms favorable to the buyer. Although the Buyer's Agent has these fiduciary duties to the buyer, the Buyer's Agent is, by law, responsible to all prospective sellers to treat them with honesty, fair dealing, and with good faith.

### AGENT OF BOTH BUYER AND SELLER

A real estate agent can, with the prior written consent of the buyer and seller, represent both the buyer and seller in the same transaction ("Limited Agent"). A Limited Agent has fiduciary duties to both the buyer and the seller, but the Limited Agent is also "limited" by a separate duty of neutrality in the negotiations between the buyer and seller.

### CONFIRMATION OF AGENCY IN THIS TRANSACTION

The Property shown above is presently listed for sale through the Company. Consequently, the Company and the Agent are representing the Seller. BY SIGNING THIS UNREPRESENTED BUYER DISCLOSURE THE BUYER ACKNOWLEDGES AND AGREES THAT THE AGENT AND THE COMPANY WILL ONLY REPRESENT THE SELLER IN THIS TRANSACTION AS A SELLER'S AGENT. THE BUYER ACKNOWLEDGES THAT THE COMPANY AND THE AGENT HAVE ADVISED THE BUYER THAT THE BUYER IS ENTITLED TO BE REPRESENTED BY A BUYER'S AGENT WHO WILL REPRESENT ONLY THE BUYER. THE BUYER HAS HOWEVER, ELECTED NOT TO BE REPRESENTED BY A REAL ESTATE AGENT IN THIS TRANSACTION.

### ACKNOWLEDGMENT

I/we acknowledge receipt of a copy of this Unrepresented Buyer Disclosure and understand and agree with the agency relationships confirmed herein.

_Greg J. Melven_  1/31/2011
_____
(Buyer)          (Date)          (Buyer)          (Date)

The Company by: _____   1/31/2011
(Authorized Agent)          Date

This form is COPYRIGHTED by the UTAH ASSOCIATION OF REALTORS® for use solely by its members. Any unauthorized use, modification, copying or distribution without written consent is prohibited. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION. IF YOU DESIRE SPECIFIC LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

COPYRIGHT© UTAH ASSOCIATION OF REALTORS® – 1994 – REVISED 11.2.05 – ALL RIGHTS RESERVED          UAR FORM 9



# FHA/VA LOAN ADDENDUM
## TO
## REAL ESTATE PURCHASE CONTRACT



THIS IS AN ADDENDUM to that REAL ESTATE PURCHASE CONTRACT (the "REPC") with an Offer Reference Date of Jan/31/2011_____ including all prior addenda and counteroffers, between Greg Melven_____ as Buyer, and Pacific Development as Seller, regarding the Property located at 1148 W 1150 S Payson, UT 84651_____.
The following terms are hereby incorporated as part of the REPC. All references to FHA/VA shall mean the Federal Housing Administration/Department of Veterans Affairs. (CHECK APPLICABLE BOXES)

1.   Buyer [X] DOES [ ] DOES NOT intend to occupy the Property as his/her residence.

2.   Buyer shall not be obligated to complete the purchase of the Property or incur any penalty or forfeiture of the Earnest Money Deposit or other down payment, or otherwise be obligated to purchase the Property, if: (a) for a VA loan, the Purchase Price exceeds the reasonable value of the Property established by the VA Certificate of Reasonable Value or VA appraisal; or (b) for an FHA loan, the Purchase Price exceeds the appraised value of the Property (excluding closing costs) established by the FHA appraisal. Buyer shall, however, have the right to complete the sale without regard to the amount of the appraised valuation made by the applicable FHA or the VA. The appraised valuation is used to determine the maximum loan that FHA will insure or VA will guarantee. Neither FHA nor the VA warrants the value or condition of the Property. Buyer should satisfy himself/herself that the price and condition of the Property are acceptable. Buyer acknowledges that an FHA/VA appraisal does not constitute a property inspection.

3.   Seller shall make any and all appraisal required repairs, provided that the cost does not exceed $_____.

4.   If required by applicable FHA or VA rules, Seller shall furnish Buyer with a current Pest Control Report showing the Property to be free and clear from termite infestation. In the event of termite infestation, Seller shall eradicate the same and repair any damage at Seller's expense, provided that the cost does not exceed $_____.

5.   There are certain costs associated with the granting of a mortgage loan, some of which FHA/VA will not allow the Buyer to pay. (Check applicable box):
      5.1 [X] Seller shall contribute at settlement an amount toward payment of loan discount points and other loan and closing related costs ("Loan Costs"). The amount of Seller's contribution shall be $4600.00_____. Such contribution shall first be applied to Loan Costs that FHA/VA will not permit Buyer to pay, and any remainder shall be allocated at Buyer's discretion toward remaining Loan Costs. Seller shall have no further obligation toward Loan Costs. If the amount of Seller's contribution exceeds the amount of actual Loan Costs, then such excess shall be returned to Seller. Seller's agreement to contribute toward payment of Loan Costs shall not modify Seller's obligations under Sections 3 of the REPC.
      5.2 [ ] Seller shall not contribute any amount toward Loan Costs.

6.   [APPLIES TO FHA ONLY] The undersigned hereby certify that the terms of the REPC are true to the best of our knowledge and belief, and that any other agreement entered into by any of the parties has been fully disclosed and is attached to the REPC.

7.   If any provision in the REPC or this ADDENDUM is inconsistent with any currently applicable law governing FHA/VA loan transactions, then to the extent of such inconsistency, that law shall govern.

---

Buyer's Initials _____ Date 1/31/20__ Seller's Initials _____ Date 2-3-11

To the extent the terms of this ADDENDUM modify or conflict with any provisions of the REPC, including all prior addenda and counteroffers, these terms shall control. All other terms of the REPC, including all prior addenda and counteroffers, not modified by this ADDENDUM shall remain the same. [X] Seller [ ] Buyer shall have until 6 : 00 [ ] AM [X] PM Mountain Time on 02/04/2011          (Date), to accept the terms of this FHA/VA LOAN ADDENDUM in accordance with the provisions of Section 23 of the REPC. Unless so accepted, the offer as set forth in FHA/VA LOAN ADDENDUM shall lapse.

_____ 1/31/2011 _____    _____
[X] Buyer [ ] Seller Signature          (Date)      (Time)   [ ] Buyer [ ] Seller Signature           (Date)       (Time)

ACCEPTANCE/COUNTEROFFER/REJECTION

CHECK ONE:
[ ] ACCEPTANCE of ADDENDUM/COUNTEROFFER: [ ] Seller [ ] Buyer hereby accepts the terms of this FHA/VA LOAN ADDENDUM.

[X] COUNTER OFFER: [X] Seller [ ] Buyer presents as a counteroffer the terms of the attached ADDENDUM NO 3

[ ] REJECTION: [ ] Seller [ ] Buyer rejects the foregoing FHA/VA LOAN ADDENDUM.

_____ 2-3-11 _____    _____
(Signature)          (Date)      (Time)   (Signature)                          (Date)       (Time)

THIS FORM APPROVED BY THE UTAH REAL ESTATE COMMISSION AND THE OFFICE OF THE UTAH ATTORNEY GENERAL,EFFECTIVE AUGUST 27, 2008. AS OF JANUARY 1, 2009, IT WILL REPLACE AND SUPERCEDE THE PREVIOUSLY APPROVED VERSION OF THIS FORM.



ADDENDUM NO. **ONE**
TO
REAL ESTATE PURCHASE CONTRACT



THIS IS AN [X] ADDENDUM [ ] COUNTEROFFER to that REAL ESTATE PURCHASE CONTRACT (the "REPC") with an Offer Reference Date of January 31, 2011_____ including all prior addenda and counteroffers, between Greg Melven_____ as Buyer, and Pacific Development_____ as Seller, regarding the Property located at 1148 W 1150 S. Payson, Utah County, UT 84651_____. The following terms are hereby incorporated as part of the REPC:

### 1. REPAIRS TO BE MADE BY SELLER

Agreed Repairs to Property. Seller and Buyer agree that the repairs to the Property will be taken care of as follows **(check applicable box):**

1.1 [X] Seller will be responsible for completion of the repairs listed below prior to the Settlement Deadline.

1.2 [ ] Seller will credit Buyer at Settlement in the amount of ( $_____ ) and Buyer agrees to be responsible for completion of the repairs listed below.

Agreed Upon Repairs (specify):

1. Drywall in the garage to be repaired where evident and repainted to match existing finish.

2. Window wells, yard, and home to be cleared of debris or cleaned to satisfaction of Buyer.

3. Landscaping to be completed with repairs made to vinyl fence and sprinkler system.

4. Sliding glass door exiting to patio needs to be repaired in order for proper egress to be maintained.

5. All window wells to have matching security grates.

BUYER AND SELLER AGREE THAT THE CONTRACT DEADLINES REFERENCED IN SECTION 24 OF THE REPC (CHECK APPLICABLE BOX): [X] REMAIN UNCHANGED [ ] ARE CHANGED AS FOLLOWS: see Short Sale Addendum

To the extent the terms of this ADDENDUM modify or conflict with any provisions of the REPC, including all prior addenda and counteroffers, these terms shall control. All other terms of the REPC, including all prior addenda and counteroffers, not modified by this ADDENDUM shall remain the same. [X] Seller [ ] Buyer shall have until 6 : 00 [ ] AM [X] PM Mountain Time on February 04, 2011_____ (Date), to accept the terms of this ADDENDUM in accordance with the provisions of Section 23 of the REPC. Unless so accepted, the offer as set forth in this ADDENDUM shall lapse.

_____ 1/31/2011 _____
[X] Buyer [ ] Seller Signature        (Date)        (Time) [ ] Buyer [ ] Seller Signature        (Date)        (Time)

## ACCEPTANCE/COUNTEROFFER/REJECTION

CHECK ONE:

[ ] ACCEPTANCE: [ ] Seller [ ] Buyer hereby accepts the terms of this ADDENDUM.

[✓] COUNTEROFFER: [✓] Seller [ ] Buyer presents as a counteroffer the terms of attached ADDENDUM NO. __3__

_____   _____   __2-3-11__   _____   _____   _____
(Signature)                                    (Date)         (Time)              (Signature)                             (Date)          (Time)

[ ] REJECTION: [ ] Seller [ ] Buyer rejects the foregoing ADDENDUM.

_____   _____   _____   _____   _____   _____
(Signature)                                    (Date)         (Time)              (Signature)                             (Date)          (Time)

THIS FORM APPROVED BY THE UTAH REAL ESTATE COMMISSION AND THE OFFICE OF THE UTAH ATTORNEY GENERAL,
EFFECTIVE AUGUST 5, 2003. IT REPLACES AND SUPERSEDES ALL PREVIOUSLY APPROVED VERSIONS OF THIS FORM.

Buyer's Initials _____   Seller's Initials _____   Addendum No. ONE to REPC





### Short Sale ADDENDUM NO. TWO
### TO
### REAL ESTATE PURCHASE CONTRACT

Participating in a Short Sale may have negative legal or tax consequences. If you desire specific
legal or tax advice, consult your attorney or tax advisor.

THIS IS AN [X] ADDENDUM [ ] COUNTEROFFER to that REAL ESTATE PURCHASE CONTRACT (the "REPC") with an
Offer Reference Date of 01/31/2011_____ including all prior addenda and counteroffers, between
Greg Melven_____ as Buyer, and Pacific Development_____ as Seller, regarding the Property located at
1148 W 1150 S. Payson, Utah County, UT 84651 (the "Property"). The terms of this Addendum are hereby
incorporated as part of the REPC, and to the extent the terms of this Addendum modify or conflict with any provisions of the
REPC, including all prior addenda and counteroffers, these terms shall control.

1. ACKNOWLEDGMENT OF SHORT SALE. This transaction is commonly referred to as a "Short Sale" because the Purchase
Price for the Property is less, or "short", of the amount(s) owed to individuals/entities that have a financial interest in the Property
(the "Third Parties"). Under the terms of the REPC, the Third Parties are being requested to accept less than what is owed to
them. Therefore, the REPC is subject to Third Party Approval as defined in Section 2 below. For purposes of this Addendum, the
Third Parties may include, without limitation, institutional lenders, mortgage insurers, bankruptcy trustees, federal, state and local
tax authorities, and private parties.

2. THIRD PARTY APPROVAL. Buyer and Seller agree that their respective obligations under the REPC are conditioned upon
Third Party Approval as defined in this Section. For purposes of the REPC, the term "Third Party Approval" shall mean that the
requirements of Sections 2.1 and 2.2 have been satisfied:

   2.1  **Obligations of Seller to Third Parties.** Third Party Approval means that Seller has reached a written agreement with the
      Third Parties regarding any conditions of approval required by the Third Parties for a Short Sale payoff, including, but not
      limited to, any deficiency rights against Seller, any requirements for a promissory note from Seller to the Third Parties, or
      any other Short Sale payoff criteria that represent a continuing obligation against Seller; and

   2.2  **Agreement to Terms & Conditions of REPC.** Third Party Approval also means that Seller, Buyer, and the Third
      Parties have reached an agreement regarding the terms and conditions for the purchase and sale of the Property. Such
      agreement may be either of the following:
         (a) Seller has received from the applicable Third Parties, written approval of the terms and conditions contained in
         the REPC as originally submitted to the Third Parties; or
         (b) Buyer and Seller have agreed to other terms and conditions as requested by the Third Parties ("Third Party
         Modifications") on a separate addendum to the REPC. The Third Party Modifications shall not be binding on Buyer
         or Seller without their mutual written consent, which consent may be withheld by Buyer and/or Seller in their sole
         discretion.

3. DELIVERY OF REPC TO THIRD PARTIES. No later than four (4) calendar days after Acceptance of the REPC by Buyer and
Seller (as defined in Section 23 of the REPC) Seller agrees to submit the REPC to the applicable Third Parties, together with any
additional documentation required by the Third Parties.

4. FAILURE TO OBTAIN THIRD PARTY APPROVAL. Seller and Buyer shall have until 02/18/2011_____ ("Third
Party Approval Deadline") to obtain Third Party Approval. If by the Third Party Approval Deadline, Third Party Approval has not
been obtained, the REPC shall automatically be deemed cancelled whereupon any Earnest Money Deposit shall be released to
Buyer without the requirement of further written authorization from Seller.

5. EARNEST MONEY DEPOSIT. Buyer agrees to deliver the Earnest Money Deposit to Buyer's Brokerage (check applicable
box): [ ] as required in the first paragraph on page one of the REPC; [X] no later than four (4) calendar days after Third Party
Approval as defined in Section 2 above; or [ ] Other (specify)

6. SELLER'S RIGHT TO ACCEPT BACK-UP OFFERS. Buyer agrees that at any time prior to Third Party Approval as defined in
Section 2 above, Seller may: (a) continue to market the Property to other interested buyers; (b) continue to advertise the Property
through the MLS showing any MLS status category (the MLS will allow) deemed necessary and appropriate by the Seller and/or
the Third Parties; (c) accept additional backup offers for the purchase of the Property ("Backup Contracts") subject to the rights
of Buyer under this contract; and (d) Seller may or may not submit any such Backup Contracts to the Third Parties for review.

Page 1 of 2                  Buyer's Initials _____ Date 1/31/2011    Seller's Initials _____ Date 2-3-11

**7. BUYER & SELLER'S RIGHT TO CANCEL REPC.** Seller and Buyer acknowledge that there will be significant time delays in obtaining any response from the Third Parties to the terms of this proposed Short Sale; and because this is a Short Sale, Seller will need to obtain the highest and best terms for the sale of the Property. During this significant time delay, circumstances may change for both Seller and Buyer. The changes in circumstances may include, but are not limited to: (a) adjustments in available mortgage financing rates and terms; (b) modifications in the financial circumstances of Seller or Buyer; (c) the timing of the transaction may no longer meet Buyer or Seller's needs; (d) Buyer may find another property that better suits Buyer's needs; and (e) Seller may receive additional offers for the purchase of the Property that better address Seller's legal and financial needs. Based on the above, if at any time prior to Third Party Approval, or the Third Party Approval Deadline, whichever occurs first, the Buyer or Seller determines that their circumstances have changed and it is no longer in their best interest to pursue the sale/ purchase of the Property, either Buyer or Seller may cancel the REPC by providing written notice to the other party. In such instance, the Earnest Money Deposit, if any, shall be returned to the Buyer without the requirement of further written authorization from Seller. Buyer and Seller acknowledge and agree that this mutual right of cancellation is fair and reasonable to both parties.

**8. CONTRACT DEADLINES.** Unless otherwise agreed to as part of the Third Party Approval, Buyer and Seller agree that the Contract Deadlines in Section 24 of the REPC are as follows:

    (a) Seller Disclosure Deadline          __3__ days after Third Party Approval.

    (b) Due Diligence Deadline            __10__ days after Third Party Approval.

    (c) Financing & Appraisal Deadline      __21__ days after Third Party Approval.

    (d) Settlement Deadline              __28__ days after Third Party Approval.

    (e) Buyer and Seller also agree that if any of the dates referenced in this Section 8 above fall on a Saturday, Sunday, or legal holiday, performance shall be required on the next business day.

ALL OTHER TERMS of the REPC, including all prior addenda and counteroffers, not modified by this ADDENDUM/ COUNTEROFFER shall remain the same. [X] Seller [ ] Buyer shall have until _6_ : _00_ [ ] AM [X] PM Mountain Time _February 04, 2011_ to accept the terms of this ADDENDUM/COUNTEROFFER in accordance with the provisions of Section 23 of the REPC. Unless so accepted, the offer as set forth in the ADDENDUM/COUNTEROFFER shall lapse.

_(signature)_ _1/31/2011_
[ ] Buyer [ ] Seller Signature      (Date)    (Time)    [ ] Buyer [ ] Seller Signature      (Date)      (Time)

**ACCEPTANCE/COUNTEROFFER/REJECTION**

CHECK ONE:
[ ] ACCEPTANCE of ADDENDUM/COUNTEROFFER: [ ] Seller [ ] Buyer hereby accepts the terms of this ADDENDUM/ COUNTER OFFER.

[X] COUNTER OFFER: [X] Seller [ ] Buyer presents as a counteroffer the terms of the attached Counteroffer No _3_

[ ] REJECTION: [ ] Seller [ ] Buyer rejects the foregoing ADDENDUM/COUNTER OFFER.

_(signature)_ _2-3-11_
[ ] Buyer [X] Seller Signature      (Date)    (Time)    [ ] Buyer [ ] Seller Signature      (Date)      (Time)

This form is COPYRIGHTED by the UTAH ASSOCIATION OF REALTORS® for use solely by its members. Any unauthorized use, modification, copying or distribution without written consent is prohibited. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION. IF YOU DESIRE SPECIFIC LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

COPYRIGHT© UTAH ASSOCIATION OF REALTORS® – 5.4.05 – REVISED – 9.1.10 – ALL RIGHTS RESERVED      UAR FORM 20





ADDENDUM NO. **THREE**
TO
REAL ESTATE PURCHASE CONTRACT

THIS IS AN [ ] ADDENDUM [X] COUNTEROFFER to that REAL ESTATE PURCHASE CONTRACT (the "REPC") with
an Offer Reference Date of January 31, 2011        including all prior addenda and counteroffers, between
Greg Melven        as Buyer, and Pacific Development        as Seller, regarding the Property
located at 1148 W 1150 S Payson, Utah County, UT 84651        . The following terms are hereby incorporated
as part of the REPC:

1. Acceptance Deadline for Seller is extended to February 9th in order for Seller to determine accurate
payoff.

2. Seller may counter purchase price during this period to reflect payoff only.

3. Any difference in allocated closing costs not used by Buyer may be applied towards purchase price.

BUYER AND SELLER AGREE THAT THE CONTRACT DEADLINES REFERENCED IN SECTION 24 OF THE REPC (CHECK
APPLICABLE BOX): [X] REMAIN UNCHANGED [ ] ARE CHANGED AS FOLLOWS: _____
_____

To the extent the terms of this ADDENDUM modify or conflict with any provisions of the REPC, including all prior addenda and
counteroffers, these terms shall control. All other terms of the REPC, including all prior addenda and counteroffers, not modified
by this ADDENDUM shall remain the same. [ ] Seller [X] Buyer shall have until 6 : 00 [ ] AM [X] PM Mountain Time on
February 08, 2011        (Date), to accept the terms of this ADDENDUM in accordance with the provisions of Section 23 of
the REPC. Unless so accepted, the offer as set forth in this ADDENDUM shall lapse.

_____  2-4-11 _____
[ ] Buyer [X] Seller Signature        (Date)        (Time) [ ] Buyer [ ] Seller Signature        (Date)        (Time)

ACCEPTANCE/COUNTEROFFER/REJECTION

CHECK ONE:
[X] ACCEPTANCE: [ ] Seller [X] Buyer hereby accepts the terms of this ADDENDUM.
[ ] COUNTEROFFER: [ ] Seller [ ] Buyer presents as a counteroffer the terms of attached ADDENDUM NO. _____

_Greg M Melven_  2/8/2011  10:45 Am  _____
(Signature)        (Date)        (Time)        (Signature)        (Date)        (Time)

[ ] REJECTION: [ ] Seller [ ] Buyer rejects the foregoing ADDENDUM.

_____
(Signature)        (Date)        (Time)        (Signature)        (Date)        (Time)

THIS FORM APPROVED BY THE UTAH REAL ESTATE COMMISSION AND THE OFFICE OF THE UTAH ATTORNEY GENERAL,
EFFECTIVE AUGUST 5, 2003. IT REPLACES AND SUPERSEDES ALL PREVIOUSLY APPROVED VERSIONS OF THIS FORM.

Buyer's Initials _____ Seller's Initials _____ Addendum No. THREE to REPC



ADDENDUM NO. **FOUR**
TO
REAL ESTATE PURCHASE CONTRACT



THIS IS AN [ ] ADDENDUM [X] COUNTEROFFER to that REAL ESTATE PURCHASE CONTRACT (the "REPC") with an Offer Reference Date of January 31, 2011 _____ including all prior addenda and counteroffers, between Greg Melven _____ as Buyer, and Pacific Development _____ as Seller, regarding the Property located at 1148 W 1150 S Payson, Utah County, UT 84651 _____. The following terms are hereby incorporated as part of the REPC:

1.  Third party has approved a sales price of $241,800.00 to reflect payoff and contractual obligations including closing costs which may cover settlement fees as well.

2.  Buyer may begin Due Diligence immediately upon Acceptance.

BUYER AND SELLER AGREE THAT THE CONTRACT DEADLINES REFERENCED IN SECTION 24 OF THE REPC (CHECK APPLICABLE BOX): [X] REMAIN UNCHANGED [ ] ARE CHANGED AS FOLLOWS: _____

_____

To the extent the terms of this ADDENDUM modify or conflict with any provisions of the REPC, including all prior addenda and counteroffers, these terms shall control. All other terms of the REPC, including all prior addenda and counteroffers, not modified by this ADDENDUM shall remain the same. [ ] Seller [X] Buyer shall have until 6 ; 00 [ ] AM [X] PM Mountain Time on February 16, 2011 _____ (Date), to accept the terms of this ADDENDUM in accordance with the provisions of Section 23 of the REPC. Unless so accepted, the offer as set forth in this ADDENDUM shall lapse.

_____ 2-14-11 _____
[ ] Buyer [X] Seller Signature      (Date)        (Time) [ ] Buyer [ ] Seller Signature        (Date)      (Time)

ACCEPTANCE/COUNTEROFFER/REJECTION

CHECK ONE:
[X] ACCEPTANCE: [ ] Seller [X] Buyer hereby accepts the terms of this ADDENDUM.
[ ] COUNTEROFFER: [ ] Seller [ ] Buyer presents as a counteroffer the terms of attached ADDENDUM NO. _____

_____ 02/15/2011 5:19AM _____
(Signature)          (Date)       (Time)        (Signature)          (Date)      (Time)

[ ] REJECTION: [ ] Seller [ ] Buyer rejects the foregoing ADDENDUM.

_____
(Signature)          (Date)       (Time)        (Signature)          (Date)      (Time)

THIS FORM APPROVED BY THE UTAH REAL ESTATE COMMISSION AND THE OFFICE OF THE UTAH ATTORNEY GENERAL, EFFECTIVE AUGUST 5, 2003. IT REPLACES AND SUPERSEDES ALL PREVIOUSLY APPROVED VERSIONS OF THIS FORM.