**The below described is SIGNED.**



Dated: April 06, 2011

_____
R. KIMBALL MOSIER
U.S. Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>**PACIFIC DEVELOPMENT, L.C.,**<br><br>Debtor. | **Bankruptcy Case No. 10-22754**<br>**Chapter 11**<br><br>**Judge R. Kimball Mosier**<br><br>**(Filed Electronically)** |

### FINDINGS AND CONCLUSIONS REGARDING MOTION TO APPROVE THE SALE OF FIVE LOTS TO SIERRA HOMES CONSTRUCTION, INC.

Upon the motion dated March 31, 2011 (the "Motion")[1] of the debtor ("Debtor" or "Seller"), for entry of an order (the "Sale Order") under 11 U.S.C. § 363, and Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure, authorizing and approving the sale (the "Sale") of the following five parcels of real property located in Heritage Village, Payson, Utah County, Utah: (i) 41-711-34; (ii) 41-711-35; (iii) 41-711-36; (iv) 41-711-37; and (v) 41-711-40, (the "Property"), free and clear of all liens, claims and encumbrances; the Court having conducted the hearing on Motion on April 6, 2011 at 3:00 p.m., James W. Anderson of Miller

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or the Agreement, as the case may be; as to any conflicts with respect to such terms, the meanings contained in the Agreement shall control over those in the Motion.

Guymon having appeared on behalf of the Debtor with others noting their appearance on the record, there being no objections to the Motion, having reviewed and considered the Motion, it appearing that notice of the Motion was good and sufficient under the particular circumstances and that no other or further notice need be given; it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate, and other parties in interest; after due deliberation thereon; good cause appearing therefore, and based upon the facts and representations set forth in the Motion, the Court hereby FINDS AND DETERMINES AS FOLLOWS:

A.    The Court's exercise of jurisdiction over this matter and over the property of Debtor and its estate is proper pursuant to 28 U.S.C. §§ 1334 and 157.

B.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).

C.    Proper, timely, and adequate notice of the Motion and Sale has been provided in accordance with Sections 102(1) and 363 of the Bankruptcy Code and Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure; (ii) the form and manner of notice was reasonable, sufficient, and appropriate under the circumstances and adequately apprised interested parties of the terms and conditions of the Sale and the relationship between the Debtor and the Buyer; and (iii) no other or further notice of the Motion or Sale is required.

E.    A reasonable opportunity to object or to be heard with respect to the Motion and the relief requested in the Motion has been afforded to all interested persons and entities.

F.    As demonstrated by the Motion, the Debtor, has fairly and reasonably assessed the value of the property.

FINDINGS AND CONCLUSIONS REGARDING MOTION TO APPROVE THE SALE OF FIVE LOTS TO SIERRA HOMES CONSTRUCTION, INC.

H.    No objections have been filed against the Motion, or all objections have been resolved or overruled.

I.    The Debtor has demonstrated sound business justification for the sale of the Property pursuant to Section 363(b) of the Bankruptcy Code in that the Debtor wishes to convert the Property to cash for payment of Estate obligations and the price submitted by the Buyer is the highest and best bid for the Property.

J.    The Real Estate Purchase Contract attached hereto as Exhibit "1" (the "Agreement") constitutes a valid and binding contract between the Debtor and Sierra Homes Construction, Inc. ("Buyer").

L.    The Agreement was negotiated, proposed, and entered into by the Debtor and Buyer without collusion, in good faith, and from an arm's length bargaining position. Neither the Debtor nor the Buyer has engaged in any conduct that would cause or permit the Agreement to be voided under Section 363(n) of the Bankruptcy Code.

M.    The Buyer did not have an undue advantage over the other potential buyers or bidders at any time.

N.    The Buyer is a third-party purchaser, unrelated to the Debtor. The Buyer is not a successor-in-interest to the Debtor.

O.    The Buyer is a "good faith" purchaser as such term is used in Section 363(m) of the Bankruptcy Code, and, as such, is entitled to all of the protections afforded thereby.

P.    The consideration provided by the Buyer for the Property pursuant to the Agreement (i) is fair and reasonable, (ii) is the highest or otherwise best offer for the Property,

FINDINGS AND CONCLUSIONS REGARDING MOTION TO APPROVE THE SALE OF FIVE LOTS TO
SIERRA HOMES CONSTRUCTION, INC.

(iii) will provide a greater recovery for the Debtor's creditors and other interested parties than

would be provided by any other practical alternative, and (iv) constitutes reasonably equivalent

value and fair consideration under the Bankruptcy Code and under the laws of the United States,

any state, territory, possession, or the District of Columbia.

Q.    The transfer of the Property to the Buyer will be a legal, valid and effective

transfer of the Property, and will vest the Buyer will all rights, title, and interest of the Debtor in

the Property free and clear of all liens, interests, and encumbrances (except as provided in the

Agreement), including, but not limited to, (i) the Notice of Interest of Tommie W. Sisk, recorded

on January 27, 2010, (ii) those that purport to give to any party a right or option to effect any

forfeiture, modification, right of first refusal, or termination of Debtor's or Buyer's interest in the

Property, or any similar rights, (iii) those relating to taxes arising under or out of, in connection

with, or in any way relating to the operation of the Property prior to closing of the Sale (the

"Closing"), (iv) all mortgages, deeds of trust, security interests, conditional sale or other title

retention agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal

or charges of any kind or nature, if any, including, but not limited to, any restriction on the use,

voting, transfer, receipt of income or other exercise of any attributes of ownership and all debts

arising in any way in connection with any agreements, acts, or failures to act, of the Debtor or

any of the Debtor's predecessors or affiliates, claims (as that term is defined in the Bankruptcy

Code), obligations, liabilities, demands, guaranties, options, rights, contractual or other

commitments, restrictions, interest and matters of any kind and nature, whether known or

unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement

4

FINDINGS AND CONCLUSIONS REGARDING MOTION TO APPROVE THE SALE OF FIVE LOTS TO
SIERRA HOMES CONSTRUCTION, INC.

of these bankruptcy cases, and whether imposed by agreement, understanding, law, equity or otherwise, including but not limited to claims otherwise arising under doctrines of successor liability to the extent permitted by law, and (v) liabilities for any claims against Debtor or any of their predecessors or affiliates of any kind or character arising prior to the Closing including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, *de facto* merger, or substantial continuity, whether known or unknown, now existing or hereafter arising, whether fixed or contingent, with respect to Debtor or any obligations of Debtor (collectively, the "Interests"). The Interests do not include the Lot 40 Construction Liens, as described in the Motion.

R.    Buyer would not have entered into the Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtor, its estate, and its creditors, if the sale of the Property to Buyer was not free and clear of all Interests of any kind or nature whatsoever, or if Buyer would, or in the future could, be liable for any of the Interests.

S.    The Debtor may sell the Property free and clear of all Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in Section 363(f) of the Bankruptcy Code has been satisfied. Those holders of Interests in the Property who did not object to the Motion are deemed to have consented to the Sale pursuant to 11 U.S.C. § 363(f)(2).

T.    No agreement prohibited by Section 363(n) of the Bankruptcy Code exists with respect to the Buyer.

5

U.     The sale of the Property to the Buyer is a reasonable and valid exercise of the Debtor's business judgment and is otherwise appropriate under section 363 of the Bankruptcy Code.  The relief requested in the Motion with respect to the Property is in the best interests of the Debtor's estate and its creditors.

V.     It is necessary and appropriate for the Court to retain jurisdiction to interpret and enforce the terms of the Sale Order and to adjudicate, if necessary, any and all disputes concerning any provision hereof.

W.     Pursuant to Section 363(b) of the Bankruptcy Code, the Debtor is authorized to perform its obligations under and comply with the terms of the Agreement, and consummate the Sale, pursuant to and in accordance with the terms and conditions of the Agreement.

X.     The Debtor is authorized to execute and deliver, and empowered to perform under, consummate and implement, the Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement, and to take all further actions as may be requested by Buyer for the purpose of assigning, transferring, granting, conveying and conferring to Buyer or reducing to possession, the Property, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Agreement, including payment of all property taxes, payment to Central Bank in the amount of $250,000, and payment of title insurance and other fees incidental to the Sale.

Y.     These findings and conclusions, as well as the Order granting the Motion and the Agreement shall be binding in all respects upon all creditors (whether known or unknown) of the Debtor, all successors and assigns of Buyer, Debtor and its affiliates, subsidiaries and parent

6

FINDINGS AND CONCLUSIONS REGARDING MOTION TO APPROVE THE SALE OF FIVE LOTS TO
SIERRA HOMES CONSTRUCTION, INC.

corporations, and any subsequent trustees appointed in Debtor's chapter 11 case or upon a conversion to chapter 7 under the Bankruptcy Code, and shall not be subject to rejection.

Z.     The Agreement and any related agreements, documents, or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court, provided such modification is not material.   The Debtor is authorized to take all commercially reasonable actions to effectuate the closing of the Sale to accommodate the schedules of both parties, to occur within the timeframe stated in the Agreement.

AA.     Except as expressly permitted or otherwise specifically provided by the Agreement, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade and other creditors, holding Interests of any kind or nature whatsoever against or in the Debtor or the Property (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtor, the Property, or the transfer of the Property to Buyer, hereby are forever barred, estopped, and permanently enjoined from asserting against Buyer, its successors or assigns, its property, or the Property, such persons' or entities' Interests.

BB.     Nothing in the Agreement shall be construed to release or nullify any liability to any governmental entity under police or regulatory requirements that any entity would be subject to as the owner or operator of Property after the date of entry of this Sale Order.

7

CC.    If any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing Interests in the Debtor or the Property shall not have delivered to Debtor prior to Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Interests which the person or entity has with respect to the Debtor or the Property or otherwise, then (a) Debtor is hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Property, and (b) Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests in the Property of any kind or nature whatsoever.

Dated this _____ day of April, 2011.

[end of order]

8

FINDINGS AND CONCLUSIONS REGARDING MOTION TO APPROVE THE SALE OF FIVE LOTS TO
SIERRA HOMES CONSTRUCTION, INC.

## CLERK'S CERTIFICATE OF SERVICE

I hereby certify that on this ___ day of _____, 2011, I caused true and correct

copies of the foregoing **FINDINGS AND CONCLUSIONS REGARDING MOTION TO**

**APPROVE THE SALE OF FIVE LOTS TO SIERRA HOMES CONSTRUCTION, INC.,**

to the individuals and entities identified below:

Blake D. Miller
James W. Anderson
Miller Guymon, P.C.
165 S. Regent St.
Salt Lake City, Utah 84111

J. Thomas Beckett
Parsons Behle & Latimer
201 South Main Street, Suite 1800
P.O. Box 45898
Salt Lake City, Utah 84145-0898

Peter J. Kuhn
US Trustees Office
Ken Garff Bldg.
405 South Main Street, Suite 300
Salt Lake City, Utah 84111

J. Scott Brown
Parsons Kinghorn Harris
111 East Broadway, 11th Floor
Salt Lake City, Utah 84111

_____
Bankruptcy Clerk

FINDINGS AND CONCLUSIONS REGARDING MOTION TO APPROVE THE SALE OF FIVE LOTS TO
SIERRA HOMES CONSTRUCTION, INC.

**Exhibit "1"—Agreement**

10

FINDINGS AND CONCLUSIONS REGARDING MOTION TO APPROVE THE SALE OF FIVE LOTS TO
SIERRA HOMES CONSTRUCTION, INC.

DocuSign Envelope ID: 52262CDD-BFB9-4400-875A-CBC30940E26E



# REAL ESTATE PURCHASE CONTRACT
# FOR LAND



This is a legally binding Real Estate Purchase Contract ("REPC"). If you desire legal or tax advice, consult your attorney or tax advisor.

## OFFER TO PURCHASE AND EARNEST MONEY DEPOSIT

On this <u>30th day of March, 2011</u> ("Offer Reference Date") <u>Sierra Homes Construction Inc</u> ("Buyer") offers to purchase from <u>Pacific Development LC</u> ("Seller") the Property described below and **[ ] delivers to the Buyer's Brokerage with this offer, or [X] agrees to deliver no later than four (4) calendar days after Acceptance (as defined in Section 23),** Earnest Money in the amount of $<u>1000</u> in the form of <u>Company Check</u>. After Acceptance of the REPC by Buyer and Seller, and receipt of the Earnest Money by the Brokerage, the Brokerage shall have four (4) calendar days in which to deposit the Earnest Money into the Brokerage Real Estate Trust Account.

Buyer's Brokerage <u>RE/MAX Results LLC-Provo</u>              Phone: <u>801-221-2600</u>

Received by: _____ on _____
            (Signature above acknowledges receipt of Earnest Money)                    (Date)

## OTHER PROVISIONS

**1. PROPERTY:** <u>TAX ID:41-711-0040, 41-711-0034, 41-711-0035, 41-711-0036, 41-711-0037</u>

also described as: <u>na</u>

City of <u>Payson</u>            , County of <u>Utah</u>            State of Utah, Zip <u>84653</u>   (the "Property"). Any reference below to the term "Property" shall include the Property described above, together with the Included Items and water rights/water shares, if any, referenced in Sections 1.1, and 1.3.

   **1.1 Included Items. (specify)** <u>All improvements to the lot</u>

   **1.2 Excluded Items. (specify)** _____

   **1.3 Water Service.** The Purchase Price for the Property shall include all water rights/water shares, if any, that are the legal source for Seller's current culinary water service and irrigation water service, if any, to the Property. The water rights/water shares will be conveyed or otherwise transferred to Buyer at Closing by applicable deed or legal instruments. The following water rights/ water shares, if applicable, are specifically excluded from this sale: _____

**2. PURCHASE PRICE.** The Purchase Price for the Property is $<u>52,500 (per lot)</u>. Except as provided in this Section, the Purchase Price shall be paid as provided in Sections 2(a) through 2(d) below. Any amounts shown in 2(b) and 2(d) may be adjusted as deemed necessary by Buyer and the Lender.

   $<u>1,000</u>     **(a) Earnest Money Deposit.** Under certain conditions described in the REPC, this deposit may become totally non-refundable.

$<u>TBD per Central bank</u> **(b) New Loan.** Buyer may apply for mortgage loan financing (the "Loan") on terms acceptable to Buyer.

   $_____     **(c) Seller Financing.** (see attached Seller Financing Addendum)

$<u>TBD per Central Bank</u> **(d) Balance of Purchase Price in Cash at Settlement**

   $<u>52,500 (per lot)</u> **PURCHASE PRICE. Total of lines (a) through (d)**

**3. SETTLEMENT AND CLOSING.**

   **3.1 Settlement.** Settlement shall take place no later than the Settlement Deadline referenced in Section 24(d), or as otherwise mutually agreed by Buyer and Seller in writing. "Settlement" shall occur only when all of the following have been completed: (a) Buyer and Seller have signed and delivered to each other or to the escrow/closing office all documents required by the REPC, by the Lender, by the title insurance and escrow/closing offices, by written escrow instructions (including any split closing

Mar-30-2011 | 06:38 PT

DocuSign Envelope ID: 52262CDD-BFB9-4400-875A-CBC30940E26E

instructions, if applicable), or by applicable law; (b) any monies required to be paid by Buyer or Seller under these documents (except for the proceeds of any new loan) have been delivered by Buyer or Seller to the other party, or to the escrow/closing office, in the form of cash, wire transfer, cashier's check, or other form acceptable to the escrow/closing office.

   **3.2   Prorations.** All prorations, including, but not limited to, homeowner's association dues, property taxes for the current year, rents, and interest on assumed obligations, if any, shall be made as of the Settlement Deadline referenced in Section 24(d), unless otherwise agreed to in writing by the parties. Such writing could include the settlement statement. The provisions of this Section 3.2 shall survive Closing.

   **3.3   Greenbelt.** If any portion of the Property is presently assessed as "Greenbelt" the payment of any roll-back taxes assessed against the Property shall be paid for by:  [X] Seller  [ ] Buyer  [ ] Split Equally Between Buyer and Seller  [ ] Other (explain)

   **3.4   Special Assessments.** Any assessments for capital improvements as approved by the HOA (pursuant to HOA governing documents) or as assessed by a municipality or special improvement district, prior to the Settlement Deadline shall be paid for by:  [X] Seller  [ ] Buyer  [ ] Split Equally Between Buyer and Seller  [ ] Other (explain) _____

The provisions of this Section 3.4 shall survive Closing.

   **3.5   Fees/Costs/Payment Obligations.** Unless otherwise agreed to in writing, Seller and Buyer shall each pay one-half (1/2) of the fee charged by the escrow/closing office for its services in the settlement/closing process. Tenant deposits (including any prepaid rents) shall be paid or credited by Seller to Buyer at Settlement. Buyer agrees to be responsible for homeowners' association and private and public utility service transfer fees, if any, and all utilities and other services provided to the Property after the Settlement Deadline. The escrow/closing office is authorized and directed to withhold from Seller's proceeds at Closing, sufficient funds to pay off on Seller's behalf all mortgages, trust deeds, judgments, mechanic's liens, tax liens and warrants. The provisions of this Section 3.5 shall survive Closing.

   **3.6   Closing.** For purposes of the REPC, "Closing" means that: (a) Settlement has been completed; (b) the proceeds of any new loan have been delivered by the Lender to Seller or to the escrow/closing office; and (c) the applicable Closing documents have been recorded in the office of the county recorder. The actions described in 3.6 (b) and (c) shall be completed within four calendar days after Settlement.

**4. POSSESSION.** Seller shall deliver physical possession of the Property to Buyer as follows:  [X] Upon Closing;
[ ] ____ Hours after Closing; [ ] ____ Calendar Days after Closing; [ ] Other (explain)

Any contracted rental of the Property prior to or after Closing, between Buyer and Seller, shall be by separate written agreement. Seller and Buyer shall each be responsible for any insurance coverage each party deems necessary for the Property. Seller agrees to deliver the Property to Buyer free of debris and personal belongings. The provisions of this Section 4 shall survive Closing.

**5. CONFIRMATION OF AGENCY DISCLOSURE.** Buyer and Seller acknowledge prior written receipt of agency disclosure provided by their respective agent that has disclosed the agency relationships confirmed below. At the signing of the REPC:

Seller's Agent    <u>Steven Bond & Josh Winn</u> , represents  [X] Seller [ ] both Buyer and Seller as a Limited Agent;

Seller's Brokerage    <u>Re/Max Results LLC - Provo</u> , represents  [ ] Seller [X] both Buyer and Seller as a Limited Agent;

Buyer's Agent    <u>Steven Bond & Josh Winn</u> , represents  [X] Buyer [ ] both Buyer and Seller as a Limited Agent;

Buyer's Brokerage    <u>Re/Max Results LLC - Provo</u> , represents  [ ] Buyer [X] both Buyer and Seller as a Limited Agent.

**6. TITLE & TITLE INSURANCE.**

   **6.1   Title to Property.** Seller represents that Seller has fee title to the Property and will convey marketable title to the Property to Buyer at Closing by general warranty deed. Buyer does agree to accept title to the Property subject to the contents of the Commitment for Title Insurance (the "Commitment") provided by Seller under Section 7, and as reviewed and approved by Buyer under Section 8. Buyer also agrees to accept title to the Property subject to any existing leases rental and property management agreements affecting the Property not expiring prior to Closing which were provided to Buyer pursuant to Section 7(e). The provisions of this Section 6.1 shall survive Closing.

   **6.2   Title Insurance.** At Settlement, Seller agrees to pay for and cause to be issued in favor of Buyer, through the title insurance agency that issued the Commitment, the most current version of an ALTA standard coverage owner's policy of title insurance. Any additional title insurance coverage desired by Buyer shall be at Buyer's expense.

Mar-30-2011 | 06:38 PT

Buyer's Initials _____ Date _____   Seller's Initials ~~_____~~ Date 3-30-11

DocuSign Envelope ID: 52262CDD-BFB9-4400-875A-CBC30940E26E

**7. SELLER DISCLOSURES.** No later than the Seller Disclosure Deadline referenced in Section 24(a), Seller shall provide to Buyer the following documents in hard copy or electronic format which are collectively referred to as the "Seller Disclosures":

(a) a written Seller Property Condition Disclosure (Land) for the Property, completed, signed and dated by Seller as provided in Section10.2;

(b) a Commitment for Title Insurance as referenced in Section 6.1;

(c) a copy of any restrictive covenants (CC&R's), rules and regulations affecting the Property;

(d) a copy of the most recent minutes, budget and financial statement for the homeowners' association, if any;

(e) a copy of any lease, rental, and property management agreements affecting the Property not expiring prior to Closing;

(f) evidence of any water rights and/or water shares referenced in Section 1.3;

(g) written notice of any claims and/or conditions known to Seller relating to environmental problems; and violation of any CC&R's, federal, state or local laws, and building or zoning code violations; and

(h) Other (specify) _____

**8. BUYER'S CONDITIONS OF PURCHASE.**

**8.1   DUE DILIGENCE CONDITION.** Buyer's obligation to purchase the Property: [X] IS [ ] IS NOT conditioned upon Buyer's Due Diligence as defined in this Section 8.1(a) below. This condition is referred to as the "Due Diligence Condition." If checked in the affirmative, Sections 8.1(a) through 8.1(c) apply; otherwise they do not.

**(a) Due Diligence Items.** Buyer's Due Diligence shall consist of Buyer's review and approval of the contents of the Seller Disclosures referenced in Section 7, and any other tests, evaluations and verifications of the Property deemed necessary or appropriate by Buyer, such as: the physical condition of the Property; the existence of any hazardous substances, environmental issues or geologic conditions; the square footage or acreage of the Property; the costs and availability of flood insurance, if applicable; water source, availability and quality; the location of property lines; regulatory use restrictions or violations; fees for services such as HOA dues, municipal services, and utility costs; convicted sex offenders residing in proximity to the Property; and any other matters deemed material to Buyer in making a decision to purchase the Property. Unless otherwise provided in the REPC, all of Buyer's Due Diligence shall be paid for by Buyer and shall be conducted by individuals or entities of Buyer's choice. Seller agrees to cooperate with Buyer's Due Diligence. Buyer agrees to pay for any damage to the Property resulting from any such inspections or tests during the Due Diligence.

**(b) Buyer's Right to Cancel or Resolve Objections.** If Buyer determines, in Buyer's sole discretion, that the results of the Due Diligence are unacceptable, Buyer may either: (i) no later than the Due Diligence Deadline referenced in Section 24(b), cancel the REPC by providing written notice to Seller, whereupon the Earnest Money Deposit shall be released to Buyer without the requirement of further written authorization from Seller; or (ii) no later than the Due Diligence Deadline referenced in Section 24(b), resolve in writing with Seller any objections Buyer has arising from Buyer's Due Diligence.

**(c) Failure to Cancel or Resolve Objections.** If Buyer fails to cancel the REPC or fails to resolve in writing any objections Buyer has arising from Buyer's Due Diligence, as provided in Section 8.1(b), Buyer shall be deemed to have waived the Due Diligence Condition.

**8.2   APPRAISAL CONDITION.** Buyer's obligation to purchase the Property: [X] IS [ ] IS NOT conditioned upon the Property appraising for not less than the Purchase Price. This condition is referred to as the "Appraisal Condition." If checked in the affirmative, Sections 8.2(a) and 8.2(b) apply; otherwise they do not.

**(a) Buyer's Right to Cancel.** If after completion of an appraisal by a licensed appraiser, Buyer receives written notice from the Lender or the appraiser that the Property has appraised for less than the Purchase Price (a "Notice of Appraised Value"), Buyer may cancel the REPC by providing written notice to Seller (with a copy of the Notice of Appraised Value) no later than the Financing & Appraisal Deadline referenced in Section 24(c); whereupon the Earnest Money Deposit shall be released to Buyer without the requirement of further written authorization from Seller.

**(b) Failure to Cancel.** If the REPC is not cancelled as provided in this section 8.2(a), Buyer shall be deemed to have waived the Appraisal Condition.

**8.3   FINANCING CONDITION.** Buyer's obligation to purchase the property: [X] IS [ ] IS NOT conditioned upon Buyer obtaining the Loan referenced in Section 2(b). This condition is referred to as the "Financing Condition." If checked in the affirmative, Sections 8.3(a) and 8.3(b) apply; otherwise they do not. If the Financing Condition applies, Buyer agrees to work diligently and in good faith to obtain the Loan.

**(a) Buyer's Right to Cancel Before the Financing & Appraisal Deadline.** If Buyer, in Buyer's sole discretion, is not satisfied with the terms and conditions of the Loan, Buyer may cancel the REPC by providing written notice to Seller no later than the Financing & Appraisal Deadline referenced in Section 24(c); whereupon the Earnest Money Deposit shall be released to Buyer without the requirement of further written authorization from Seller.

**(b) Buyer's Right to Cancel After the Financing & Appraisal Deadline.** If after expiration of the Financing & Appraisal Deadline referenced in Section 24(c), Buyer fails to obtain the Loan, meaning that the proceeds of the Loan have not been delivered by the Lender to Seller or to the escrow/closing office as required under Section 3.6 of the REPC, then Buyer or Seller may cancel the REPC by providing written notice to the other party; whereupon the Earnest Money Deposit, or Deposits, if applicable (see Section 8.4 below), shall be released to Seller without the requirement of further written authorization from Buyer.

Mar-30-2011 | 06:38 PT

DocuSign Envelope ID: 52262CDD-BFB9-4400-875A-CBC30940E26E

In the event of such cancellation, Seller agrees to accept as Seller's exclusive remedy, the Earnest Money Deposit, or Deposits, if applicable, as liquidated damages. Buyer and Seller agree that liquidated damages would be difficult and impractical to calculate, and the Earnest Money Deposit, or Deposits, if applicable, is a fair and reasonable estimate of Seller's damages in the event Buyer fails to obtain the Loan.

**8.4   ADDITIONAL EARNEST MONEY DEPOSIT.** If the REPC has not been previously cancelled by Buyer as provided in Sections 8.1, 8.2 or 8.3(a), then no later than the Due Diligence Deadline referenced in Section 24(b), or the Financing & Appraisal Deadline referenced in Section 24(c), whichever is later, Buyer [ ] **WILL** [X] **WILL NOT** deliver to the Buyer's Brokerage, an Additional Earnest Money Deposit in the amount of $_____. The Earnest Money Deposit and the Additional Earnest Money Deposit, if applicable, are sometimes referred to herein as the "Deposits". The Earnest Money Deposit, or Deposits, if applicable, shall be credited toward the Purchase Price at Closing.

**9. ADDENDA.** There [X] **ARE** [ ] **ARE NOT** addenda to the REPC containing additional terms. If there are, the terms of the following addenda are incorporated into the REPC by this reference: [X] **Addendum No.** _____ [ ] **Seller Financing Addendum** [X] **Other (specify)** LIMITED AGENCY CONSENT FORM _____

**10. AS-IS CONDITION OF PROPERTY.**
    **10.1 Condition of Property/Buyer Acknowledgements.** Buyer acknowledges and agrees that in reference to the physical condition of the Property: (a) Buyer is purchasing the Property in its "As-Is" condition without expressed or implied warranties of any kind; (b) Buyer shall have, during Buyer's Due Diligence as referenced in Section 8.1, an opportunity to completely inspect and evaluate the condition of the Property; and (c) if based on the Buyer's Due Diligence, Buyer elects to proceed with the purchase of the Property, Buyer is relying wholly on Buyer's own judgment and that of any contractors or inspectors engaged by Buyer to review, evaluate and inspect the Property.
    **10.2 Condition of Property/Seller Acknowledgements.** Seller acknowledges and agrees that in reference to the physical condition of the Property, Seller agrees to: (a) disclose in writing to Buyer defects in the Property known to Seller that materially affect the value of the Property that cannot be discovered by a reasonable inspection by an ordinary prudent Buyer; (b) carefully review, complete, and provide to Buyer a written Seller Property Condition Disclosure (Land) as stated in Section 7(a); and (c) deliver the Property to Buyer in substantially the same general condition as it was on the date of Acceptance, as defined in Section 23. The provisions of Sections 10.1 and 10.2 shall survive Closing.

**11. FINAL PRE-SETTLEMENT INSPECTION.**
    **11.1   Pre-Settlement Inspection.** At any time prior to Settlement, Buyer may conduct a final pre-Settlement inspection of the Property to determine only that the Property is "as represented", meaning that the items referenced in Sections 1.1, 1.3 and 8.1(b)(ii) ("the items") are respectively present, repaired or corrected as agreed. The failure to conduct a pre-Settlement inspection or to claim that an item is not as represented shall not constitute a waiver by Buyer of the right to receive, on the date of possession, the items as represented. If the items are not as represented, Seller agrees to cause all applicable items to be corrected, repaired or replaced (the "Work") prior to the Settlement Deadline referenced in Section 24(d).
    **11.2   Escrow to Complete the Work.** If, as of Settlement, the Work has not been completed, then Buyer and Seller agree to withhold in escrow at Settlement a reasonable amount agreed to by Seller, (and Lender, if applicable), sufficient to pay for completion of the Work. If the Work is not completed within thirty (30) calendar days after the Settlement Deadline, the amount so escrowed may, subject to Lender's approval, be released to Buyer as liquidated damages for failure to complete the Work. The provisions of this Section 11.2 shall survive Closing.

**12. CHANGES DURING TRANSACTION.** Seller agrees that from the date of Acceptance until the date of Closing, none of the following shall occur without the prior written consent of Buyer: (a) no changes in any leases, rental or property management agreements shall be made; (b) no new lease, rental or property management agreements shall be entered into; (c) no substantial alterations or improvements to the Property shall be made or undertaken; (d) no further financial encumbrances to the Property shall be made, and (e) no changes in the legal title to the Property shall be made.

**13. AUTHORITY OF SIGNERS.** If Buyer or Seller is a corporation, partnership, trust, estate, limited liability company or other entity, the person signing the REPC on its behalf warrants his or her authority to do so and to bind Buyer and Seller.

**14. COMPLETE CONTRACT.** The REPC together with its addenda, any attached exhibits, and Seller Disclosures (collectively referred to as the "REPC"), constitutes the entire contract between the parties and supersedes and replaces any and all prior negotiations, representations, warranties, understandings or contracts between the parties whether verbal or otherwise. The REPC cannot be changed except by written agreement of the parties.

**15. MEDIATION.** Any dispute relating to the REPC arising prior to or after Closing: [ ] **SHALL** [X] **MAY AT THE OPTION OF THE PARTIES** first be submitted to mediation. Mediation is a process in which the parties meet with an impartial person who helps to resolve the dispute informally and confidentially. Mediators cannot impose binding decisions. The parties to the dispute

Buyer's Initials (_____  Date _____  Seller's Initials _____  Date 3·30-11

MAR-30-2011 06:38 PM

DocuSign Envelope ID: 52262CDD-BFB9-4400-875A-CBC30940E26E

must agree before any settlement is binding. The parties will jointly appoint an acceptable mediator and share equally in the cost of such mediation. If mediation fails, the other procedures and remedies available under the REPC shall apply. Nothing in this Section 15 prohibits any party from seeking emergency legal or equitable relief, pending mediation. The provisions of this Section 15 shall survive Closing.

**16. DEFAULT.**
   **16.1 Buyer Default.** If Buyer defaults, Seller may elect one of the following remedies: (a) cancel the REPC and retain the Earnest Money Deposit, or Deposits, if applicable, as liquidated damages; (b) maintain the Earnest Money Deposit, or Deposits, if applicable, in trust and sue Buyer to specifically enforce the REPC; or (c) return the Earnest Money Deposit, or Deposits, if applicable, to Buyer and pursue any other remedies available at law.
   **16.2 Seller Default.** If Seller defaults, Buyer may elect one of the following remedies: (a) cancel the REPC, and in addition to the return of the Earnest Money Deposit, or Deposits, if applicable, Buyer may elect to accept from Seller, as liquidated damages, a sum equal to the Earnest Money Deposit, or Deposits, if applicable; or (b) maintain the Earnest Money Deposit, or Deposits, if applicable, in trust and sue Seller to specifically enforce the REPC; or (c) accept a return of the Earnest Money Deposit, or Deposits, if applicable, and pursue any other remedies available at law. If Buyer elects to accept liquidated damages, Seller agrees to pay the liquidated damages to Buyer upon demand.

**17. ATTORNEY FEES AND COSTS/GOVERNING LAW.** In the event of litigation or binding arbitration to enforce the REPC, the prevailing party shall be entitled to costs and reasonable attorney fees. However, attorney fees shall not be awarded for participation in mediation under Section 15. This contract shall be governed by and construed in accordance with the laws of the State of Utah. The provisions of this Section 17 shall survive Closing.

**18. NOTICES.** Except as provided in Section 23, all notices required under the REPC must be:  (a) in writing; (b) signed by the Buyer or Seller giving notice; and (c) received by the Buyer or the Seller, or their respective agent, or by the brokerage firm representing the Buyer or Seller, no later than the applicable date referenced in the REPC.

**19. NO ASSIGNMENT.** The REPC and the rights and obligations of Buyer hereunder, are personal to Buyer. The REPC may not be assigned by Buyer without the prior written consent of Seller. Provided, however, the transfer of Buyer's interest in the REPC to any business entity in which Buyer holds a legal interest, including, but not limited to, a family partnership, family trust, limited liability company, partnership, or corporation (collectively referred to as a "Permissible Transfer"), shall not be treated as an assignment by Buyer that requires Seller's prior written consent. Furthermore, the inclusion of "and/or assigns" or similar language on the line identifying Buyer on the first page of the REPC shall constitute Seller's written consent only to a Permissible Transfer.

**20. INSURANCE & RISK OF LOSS.**
   **20.1  Insurance Coverage.** As of Closing, Buyer shall be responsible to obtain such casualty and liability insurance coverage on the Property in amounts acceptable to Buyer and Buyer's Lender, if applicable.
   **20.2  Risk of Loss.** If prior to Closing, any part of the Property is damaged or destroyed by fire, vandalism, flood, earthquake, or act of God, the risk of such loss or damage shall be borne by Seller; provided however, that if the cost of repairing such loss or damage would exceed ten percent (10%) of the Purchase Price referenced in Section 2, Buyer may elect to either: (i) cancel the REPC by providing written notice to the other party, in which instance the Earnest Money, or Deposits, if applicable, shall be returned to Buyer; or (ii) proceed to Closing, and accept the Property in its "As-Is" condition.

**21. TIME IS OF THE ESSENCE.** Time is of the essence regarding the dates set forth in the REPC. Extensions must be agreed to in writing by all parties. Unless otherwise explicitly stated in the REPC: (a) performance under each Section of the REPC which references a date shall absolutely be required by 5:00 PM Mountain Time on the stated date; and (b) the term "days" and "calendar days" shall mean calendar days and shall be counted beginning on the day following the event which triggers the timing requirement (e.g. Acceptance). Performance dates and times referenced herein shall not be binding upon title companies, lenders, appraisers and others not parties to the REPC, except as otherwise agreed to in writing by such non-party.

**22. ELECTRONIC TRANSMISSION AND COUNTERPARTS.** Electronic transmission (including email and fax) of a signed copy of the REPC, any addenda and counteroffers, and the retransmission of any signed electronic transmission shall be the same as delivery of an original. The REPC and any addenda and counteroffers may be executed in counterparts.

**23. ACCEPTANCE.** "Acceptance" occurs **only** when **all** of the following have occurred: (a) Seller or Buyer has signed the offer or counteroffer where noted to indicate acceptance; and (b) Seller or Buyer or their agent has communicated to the other party or to the other party's agent that the offer or counteroffer has been signed as required.

Mar-30-2011 | 06:38 PT

Buyer's Initials [_____ Date _____ Seller's Initials _____ Date 3-30-11

DocuSign Envelope ID: 52262CDD-BFB9-4400-875A-CBC30940E26E

**24. CONTRACT DEADLINES.** Buyer and Seller agree that the following deadlines shall apply to the REPC:

(a) **Seller Disclosure Deadline**      <u>April 08, 2011</u>  (Date)
(b) **Due Diligence Deadline**          <u>April 15, 2011</u>  (Date)
(c) **Financing & Appraisal Deadline**  <u>April 15, 2011</u>  (Date)
(d) **Settlement Deadline**             <u>On or Before April 29th, 2011</u> (Date)

**25. OFFER AND TIME FOR ACCEPTANCE.** Buyer offers to purchase the Property on the above terms and conditions. If Seller does not accept this offer by: <u>5</u> : ___ [ ] AM [X] PM Mountain Time on <u>April 01, 2011</u> (Date), this offer shall lapse; and the Brokerage shall return any Earnest Money Deposit to Buyer.

Mar-30-2011 | 06:38 PT

_____    _____    _____
(Buyer's Signature)                (Offer Date)    (Buyer's Signature)              (Offer Date)


<u>Sierra Homes Construction Inc</u>    _____    _____    _____
(Buyer's Names) **(PLEASE PRINT)**      (Notice Address)              (Zip Code)   (Phone)


_____    _____    _____    _____
(Buyer's Names) **(PLEASE PRINT)**      (Notice Address)              (Zip Code)   (Phone)

ACCEPTANCE/COUNTEROFFER/REJECTION

**CHECK ONE:**

[X] **ACCEPTANCE OF OFFER TO PURCHASE:** Seller Accepts the foregoing offer on the terms and conditions specified above.

[ ] **COUNTEROFFER:** Seller presents for Buyer's Acceptance the terms of Buyer's offer subject to the exceptions or modifications as specified in the attached ADDENDUM NO. _____.

[ ] **REJECTION:** Seller rejects the foregoing offer.

_____  3-30-11    _____    _____    _____
(Seller's Signature)        (Date)     (Time)   (Seller's Signature)         (Date)     (Time)


<u>Pacific Development LC</u>    _____    _____    _____
(Seller's Names) **(PLEASE PRINT)**      (Notice Address)              (Zip Code)   (Phone)


_____    _____    _____    _____
(Seller's Names) **(PLEASE PRINT)**      (Notice Address)              (Zip Code)   (Phone)

This form is COPYRIGHTED by the UTAH ASSOCIATION OF REALTORS® for use solely by its members. Any unauthorized use, modification, copying or distribution without written consent is prohibited. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION. IF YOU DESIRE SPECIFIC LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

COPYRIGHT© UTAH ASSOCIATION OF REALTORS® - 7.4.04 - REVISED - 4.22.10 - ALL RIGHTS RESERVED      UAR FORM 19

Mar-30-2011 | 06:38 PT

Buyer's Initials _____ Date _____   Seller's Initials _____ Date <u>3-30-11</u>

DocuSign Envelope ID: 52262CDD-BFB9-4400-875A-CBC30940E26E




ADDENDUM NO. __ONE__
TO
**REAL ESTATE PURCHASE CONTRACT**

THIS IS AN [X] ADDENDUM [ ] COUNTEROFFER to that REAL ESTATE PURCHASE CONTRACT (the "REPC") with
an Offer Reference Date of __December 21, 2010__   including all prior addenda and counteroffers, between
__Sierra Homes Construction Inc__ as Buyer, and __Pacific Development LC__   as Seller, regarding the Property
located at __See below for tax id's__   . The following terms are hereby incorporated
as part of the REPC: ·

__1.  This offer and its acceptance is subject to 3rd party approval by the Trustee involved in the bankruptcy__
__case and Central Bank.__

BUYER AND SELLER AGREE THAT THE CONTRACT DEADLINES REFERENCED IN SECTION 24 OF THE REPC (CHECK
APPLICABLE BOX): [X] REMAIN UNCHANGED [ ] ARE CHANGED AS FOLLOWS: _____
_____

To the extent the terms of this ADDENDUM modify or conflict with any provisions of the REPC, including all prior addenda and
counteroffers, these terms shall control. All other terms of the REPC, including all prior addenda and counteroffers, not modified
by this ADDENDUM shall remain the same. [X] Seller [ ] Buyer shall have until _5_ : ___ [ ] AM [X] PM Mountain Time on
__April 01, 2011__   (Date), to accept the terms of this ADDENDUM in accordance with the provisions of Section 23 of
the REPC. Unless so accepted, the offer as set forth in this ADDENDUM shall lapse.

_B Stocking_                                  Mar-30-2011 | 06:38 PT

[X] Buyer [ ] Seller Signature          (Date)          (Time) [ ] Buyer [ ] Seller Signature          (Date)          (Time)

**ACCEPTANCE/COUNTEROFFER/REJECTION**

CHECK ONE:
[X] ACCEPTANCE: [X] Seller [ ] Buyer hereby accepts the terms of this ADDENDUM.
[ ] COUNTEROFFER: [ ] Seller [ ] Buyer presents as a counteroffer the terms of attached ADDENDUM NO. _____

_____  3 - 30-11_
(Signature)          (Date)          (Time)          (Signature)                    (Date)          (Time)

[ ] REJECTION: [ ] Seller [ ] Buyer rejects the foregoing ADDENDUM.

_____
(Signature)          (Date)          (Time)          (Signature)                    (Date)          (Time)

THIS FORM APPROVED BY THE UTAH REAL ESTATE COMMISSION AND THE OFFICE OF THE UTAH ATTORNEY GENERAL,
EFFECTIVE AUGUST 5, 2003. IT REPLACES AND SUPERSEDES ALL PREVIOUSLY APPROVED VERSIONS OF THIS FORM.



Utah Association
of REALTORS®
REALTOR'

# BUYER DUE DILIGENCE CHECKLIST



EQUAL HOUSING
OPPORTUNITY

This is a legally binding document. If not understood, consult an attorney.

**THIS BUYER DUE DILIGENCE CHECKLIST** is provided by <u>Re/Max Results LLC - Provo</u> (the "Company"), including <u>Steven W Bond</u> (the "Agent") to <u>Sierra Homes Construction Inc</u> (the "Buyer") in connection with the purchase of any property, including (if known) the property located at: <u>Any and all lots purchased in Heritage Village Subdivision of Payson, Utah</u> (the "Property").

---

### NOTICE FROM COMPANY

Buyer is advised that the Company and its agents are trained in the marketing of real estate. Neither the Company nor its agents are trained or licensed to provide Buyer with professional advice regarding the physical condition of any property or regarding legal or tax matters. The Company and its agents strongly recommend that in connection with any offer to acquire any property, Buyer retain the professional services of legal and/or tax advisors, property inspectors, surveyors, and other professionals to satisfy Buyer as to any and all aspects of the physical and legal condition of the property. BUYER IS ADVISED NOT TO RELY ON THE COMPANY, OR ON ANY AGENTS OF THE COMPANY, FOR A DETERMINATION REGARDING THE PHYSICAL OR LEGAL CONDITION OF THE PROPERTY. The following is a general listing of issues that Buyer should consider in evaluating any property. This is not intended to be a comprehensive list of all issues that may be relevant in Buyer's evaluation of a specific property, including any property listed above. This document is, however, intended to direct Buyer's attention to a number of issues that are commonly considered important in the evaluation of any property.

---

**1. BUILDING CODE/ZONING COMPLIANCE:** Buyer is advised to consult with local zoning officials to assure that Buyer's intended use of the Property (including, but not limited to, rental and business uses, construction of new improvements and/or the remodel of existing improvements) will comply with local zoning requirements and with any recorded restrictive covenants and conditions. Buyer should determine whether a certificate of occupancy has been issued for the Property and if such certificate is available for inspection. Buyer is also advised to make inquiry at the local building department to determine if building permits and final inspections were obtained for any remodel work at the Property, if applicable. Buyer acknowledges that the Company should not be relied upon for any determination as to any past, present or future building code or zoning restrictions or violations, or as to the suitability of the Property for Buyer's intended use.

**2. RENTAL OF PROPERTY:** If Buyer intends to use the Property as a rental, Buyer is advised to consult with local zoning officials and to review any applicable restrictive covenants to determine that rental of the Property is a legal use, and does not violate any restrictive covenants. Buyer is also advised to consult with local governmental authorities to determine whether a business or other license is required in order to use the Property as a rental. Buyer acknowledges that the Company should not be relied upon for any determination as to whether rental of the Property is a legal or permitted use.

**3. HAZARDOUS WASTE AND TOXIC SUBSTANCES:** Buyer is advised to consult with appropriate professionals regarding the possible existence of hazardous wastes and toxic substances on the Property, including, but not limited to, asbestos, radon gas, lead and lead-based paint, and contamination of the Property from the use, storing or manufacturing of any illegal substances including, methamphetamines. Buyer is advised that a variety of federal laws can place strict liability on property owners for hazardous waste management and cleanup of hazardous substances. Buyer is advised of Buyer's obligation to make appropriate inquiries ("due diligence") into past uses of the Property to ascertain the possible existence of hazardous wastes or toxic substances. Buyer acknowledges that the Company should not be relied upon for any determination as to the existence of any hazardous wastes or toxic substances.

**4. SURVEYING AND STAKING:** Buyer is advised that without an accurate survey of the Property, Buyer cannot be certain as to the boundaries of the Property, or that any improvements on the Property are not encroaching upon adjoining parcels of property, or that improvements located on adjoining parcels of property do not encroach onto the Property. Walls and fences may not correspond with legal boundary lines for the Property. Buyer acknowledges that the Company should not be relied upon for any determination as to the boundaries of the Property or of any encroachments within or over the actual boundaries of the Property.

**5. HOME WARRANTY PLANS:** Buyer acknowledges that Buyer has been advised by the Company of the availability of Home Warranty Plans which provide limited warranties for certain home appliances and certain components of the Property after Closing.

**6. FLOOD ZONE AND INSURANCE:** If the Property is located in a "Flood Zone" as set forth on the H.U.D. "Special Flood Zone Area" map, the mortgage lender may require that Buyer obtain and pay for flood insurance on the Property and its improvements.

**7. HOMEOWNERS INSURANCE:** Buyer is advised that certain properties, due to location, condition, and/or claims history, may be uninsurable, or may only be insurable at an increased cost. Buyer is also advised that Buyer's credit, insurance claims history, and other issues (such as specific kinds of pets), may be factors in determining the availability and cost of homeowners insurance. Buyer is advised to consult directly with insurance companies of Buyer's choice regarding the availability and costs of

Mar-30-2011  |  0-

Buyer's Initials [ _b_ ] Date _____

DocuSign Envelope ID: 52262CDD-BFB9-4400-875A-CBC30D105335

homeowner's insurance for the Property.

**8. TITLE ISSUES/HOMEOWNER'S ASSOCIATION:** Buyer is advised that title insurance companies offer a variety of title insurance policies that provide different levels of coverage. Buyer is advised to carefully review with legal counsel and with the title insurer: (a) the available title insurance coverage; (b) the contents of any Commitment for Title Insurance on the Property; and (c) the contents of all documents affecting the Property that are a matter of public record, including, but not limited to, any restrictive covenants (CC&R's). If the Property is part of a Condominium or other Homeowners Association ("HOA"), Buyer is advised to consult directly with the HOA regarding all HOA matters that may affect the Property, including, but not limited to, existing and proposed budgets, financial statements, present and proposed assessments, dues, fees, reserve accounts, rules, and meeting minutes.

**9. PHYSICAL CONDITION:** Buyer is advised to consult with appropriate professionals regarding all physical aspects of the Property, including, but not limited to: built-in appliances; plumbing fixtures, lines, fittings and systems; heating, air conditioning systems and components; electrical wiring, systems, appliances and components; foundation; roof; structure; exterior surfaces (including stucco), exterior features and equipment; pool/spa systems and components; any diseased trees or other landscaping; and moisture seepage and damage from roof, foundation or windows. Buyer is advised not to rely on seller, the Company, or any agents of the Company for a determination regarding the physical condition of the Property.

**10. SQUARE FOOTAGE/ACREAGE:** If the square footage or acreage of the Property is of material concern to Buyer, Buyer is advised to verify the square footage or acreage through any independent sources or means deemed appropriate by Buyer. In the event the Company provides any numerical statements regarding these items, such statements are approximations only. Buyer is advised not to rely on seller, the Company, or any agents of the Company for a determination regarding the square footage or acreage of the Property.

**11. UTILITY SERVICES:** Buyer is advised to consult with appropriate professionals regarding the location of utility service lines and the availability and cost of all utility services for the Property including, but not limited to, sewer, natural gas, electricity, telephone, and cable TV. Buyer is advised that the Property may not be connected to public water and/or public sewer, and applicable fees may not have been paid. Septic tanks may need to be pumped. Leach fields may need to be inspected.

**12. WATER:** Buyer is advised to consult with the water service provider for the Property and with other appropriate professionals regarding the source, quality, and availability of water for the Property; and regarding all applicable fees and costs (including, without limitation, connection fees, stand-by fees and service fees), use and regulatory restrictions, and ownership of water rights and water system. Depending upon the location of the Property, the water service provider, and climate conditions, water service to the Property may be interrupted. A well and well system may require inspection. Buyer is further advised that, depending upon the location of the Property, State and local laws may impose specific requirements regarding the source, the capacity, and the quality of water that will service new plat or building permit applications. Such water-related laws may directly impact Buyer's ability to develop the Property and/or obtain a building permit for any improvements to the Property. Buyer is advised to consult directly with applicable State and local authorities, and with legal counsel, regarding the content and potential affect of such water-related laws.

**13. GEOLOGIC CONDITIONS:** Buyer is advised to consult with appropriate professionals regarding possible geologic conditions at or near the Property. Such geologic conditions may include, but are not limited to, soil and terrain stability, the existence of wetlands, drainage problems, and any building and/or zoning requirements relating to such geologic conditions.

**14. MOLD:** Buyer is advised to consult with appropriate professionals to determine the possible existence of mold in the Property. Water leaks and water damage to the Property may result in mold that may have adverse health affects. Additional information regarding mold is available through the EPA at: www.epa.gov.

**15. HOUSING COMPLIANCE:** Buyer is advised to consult with appropriate professionals regarding neighborhood or property conditions including, but not limited to: schools; proximity and adequacy of law enforcement; proximity to commercial, industrial, or agricultural activities; crime statistics; fire protection; other governmental services; existing and proposed transportation; construction and development; noise or odor from any source; and other nuisances, hazards, or circumstances. All properties will be shown without regard to race, color, religion, sex, national origin, handicap or familial status and any other requirements of federal and state fair housing laws.

**16. PROPERTY TAXES:** Buyer is also advised that, depending upon present use, the Property may be taxed as "Greenbelt". A purchase of the Property may change the Greenbelt status and the amount of property taxes assessed by the County. Such change in Greenbelt status may also result in liability for roll-back taxes. If Buyer has any questions regarding County property tax requirements, Buyer is advised to consult directly with the County Assessor's Office.

**17. INCOME TAX/LEGAL CONSEQUENCES:** Buyer is advised that this transaction has tax and legal consequences. Buyer is advised to consult with appropriate legal and tax advisors regarding this transaction.

Buyer's Initials [ _____ ] Date _____

Mar-30-2011 | 06:

DocuSign Envelope ID: 52262CDD-BFB9-4400-875A-CBC3D9405285

### RECEIPT AND ACKNOWLEDGEMENT OF BUYER

I have carefully reviewed this BUYER DUE DILIGENCE CHECKLIST. I understand my right and the recommendation of the Company to consult with appropriate experts and professionals prior to, or as part of an offer to purchase any property. **I FURTHER UNDERSTAND THAT I HAVE THE RIGHT TO INCLUDE ANY OR ALL OF THE ABOVE ISSUES AS A CONDITION OF MY OFFER TO PURCHASE ANY PROPERTY.**

*B Stocking*                    Mar-30-2011  |  06:38 PT

| Buyer Signature | Date | Buyer Signature | Date |

This form is COPYRIGHTED by the UTAH ASSOCIATION OF REALTORS® for use solely by its members. Any unauthorized use, modification, copying or distribution without written consent is prohibited. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION. IF YOU DESIRE SPECIFIC LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

COPYRIGHT© UTAH ASSOCIATION OF REALTORS® − 1995 − REVISED 12.01.07 − ALL RIGHTS RESERVED                    UAR FORM 12

Buyer's Initials [ *B* ] Date _____      Mar-30-2011  |  06

DocuSign Envelope ID: 52262CDD-BFB9-4400-875A-CBC30940E26E



# LIMITED AGENCY CONSENT AGREEMENT



### THIS IS A LEGALLY BINDING AGREEMENT – READ CAREFULLY BEFORE SIGNING

Name of Buyer(s): <u>Sierra Homes Construction Inc</u>    Name of Seller(s): <u>Pacific Development LC</u>.

Agent Representing Buyer:    Agent Representing Seller:
<u>Steven W Bond & Joshua Winn</u>    <u>Steven W. Bond & Joshua Winn</u>.

Name of Brokerage: <u>Re/Max Results LLC - Provo</u>_____(the "Company").

The Buyer and the Seller are both presently using the services of the Company in a possible real estate transaction involving real property located at: <u>Heritage Village Subdivision</u>_____(referred to below as the "Property").

**AS THE BUYER AND THE SELLER PROCEED WITH THIS TRANSACTION IT IS IMPORTANT THAT THEY EACH UNDERSTAND THEIR PROFESSIONAL RELATIONSHIP WITH THE REAL ESTATE AGENT(S) AND WITH THE COMPANY. WHAT FOLLOWS IS A BRIEF BUT VERY IMPORTANT EXPLANATION OF THE NATURE OF AGENCY RELATIONSHIPS BETWEEN THE BUYER, THE SELLER, THE COMPANY, AND THE REAL ESTATE AGENTS WORKING IN THIS TRANSACTION.**

**1. Principal or Branch Broker.** Every real estate agent must affiliate with a real estate broker. The broker is referred to as a Principal Broker or a Branch Broker (if the brokerage has a branch office). The broker is responsible for operation of the brokerage and for the professional conduct of all agents.

**2. Right of Agents to Represent Seller and/or Buyer.** An agent may represent, through the brokerage, a seller who wants to sell property or a buyer who wants to buy property. On occasion, an agent will represent both seller and buyer in the same transaction. When an agent represents a seller, the agent is a "Seller's Agent"; when representing a buyer, the agent is a "Buyer's Agent"; and when representing both seller and buyer, the agent is a "Limited Agent".

**3. Seller's Agent.** A Seller's Agent works to assist the seller in locating a buyer and in negotiating a transaction suitable to the seller's specific needs. A Seller's Agent has fiduciary duties to the seller which include loyalty, full disclosure, confidentiality, diligence, obedience, reasonable care, and holding safe monies entrusted to the agent.

**4. Buyer's Agent.** A Buyer's Agent works to assist the buyer in locating and negotiating the acquisition of a property suitable to that buyer's specific needs. A Buyer's Agent has the same fiduciary duties to the buyer that the Seller's Agent has to the Seller.

**5. Limited Agent.** A Limited Agent represents both seller and buyer in the same transaction and works to assist in negotiating a mutually acceptable transaction. A Limited Agent has fiduciary duties to both seller and buyer. However, those duties are "limited" because the agent cannot provide to both parties undivided loyalty, full confidentiality and full disclosure of all information known to the agent. For this reason, a Limited Agent must remain neutral in the representation of a seller and buyer, and may not disclose to either party information likely to weaken the bargaining position of the other; such as, the highest price the buyer will pay or the lowest price the seller will accept. A Limited Agent must, however, disclose to both parties material information known to the Limited Agent regarding a defect in the Property and/or the ability of each party to fulfill agreed upon obligations, and must disclose information given to the Limited Agent in confidence, by either party, if the failure to disclose would be a material misrepresentation regarding the Property.

**6. In-House Sale.** If the buyer and the seller are both represented by one or more agents in the same brokerage, that transaction is commonly referred to as an "In-House Sale". Consequently, most In-House Sales involve limited agency because seller and buyer are represented by the same brokerage.

**7. Conflicts with the In-House Sale.** There are conflicts associated with an In-House Sale; for example, agents affiliated with the same brokerage discuss with each other the needs of their respective buyers or sellers. Such discussions could inadvertently compromise the confidentiality of information provided to those agents. For that reason, the Company has policies designed to protect the confidentiality of discussions between agents and access to confidential client and transaction files.

**8. Earnest Money Deposit.** Buyer and Seller agree that although the Company is authorized to act as a Limited Agent, Buyer and Seller authorize and direct the Principal Broker for the Company to hold and release the Earnest Money Deposit in accordance with the terms and conditions of the real estate purchase contract, or other written agreement entered into between the Buyer and the Seller.

Seller's Initials  Buyer's Initials ___

DocuSign Envelope ID: 52262CDD-BFB9-4400-875A-CBC30940E26E

**9. Authorization for Limited Agency.** The Seller and Buyer are advised that they are not required to accept a limited agency situation in the Company and that Buyer and Seller are each entitled to be represented by their own agent. However, it is the business practice of the Company to participate in In-House Sales. By signing this agreement, Buyer and Seller consent to a limited agency within the Company as provided below: *(Check Applicable Box):*

[X] **A. One Agent.** The Buyer and the Seller consent to: <u>Steven Bond & Josh Winn</u>(name of Agent); and the Principal/ Branch Broker representing both the Buyer and the Seller as a Limited Agent as described above.

**B. Two Agents.** The Buyer and the Seller consent to: _____(Seller's Agent) continuing to
[ ] represent the Seller; and: _____(Buyer's Agent); continuing to represent the Buyer; and the Principal/Branch Broker acting as a Limited Agent as described above.

DocuSigned by:

*B Stocking*

Mar-30-2011 | 06:38 PT

_____          _____          _____          _____
(Buyer)                            (Date)                             (Seller)                           (Date)

_____          _____          _____          3-30-11
(Buyer)                            (Date)                             (Seller)                           (Date)

ACCEPTED by the Company:

by: _____          3/30/2011
                (Signature of Authorized Agent or Broker)                (Date)

This form is COPYRIGHTED by the UTAH ASSOCIATION OF REALTORS® for use solely by its members. Any unauthorized use, modification, copying or distribution without written consent is prohibited. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION. IF YOU DESIRE SPECIFIC LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

COPYRIGHT© UTAH ASSOCIATION OF REALTORS® – REVISED – 3.19.10 – ALL RIGHTS RESERVED                    UAR FORM 7

Seller's Initials _____   Buyer's Initials _____

DocuSign Envelope ID: 52262CDD-BFB9-4400-875A-CBC30940E26E



ADDENDUM NO. **ONE**
TO
REAL ESTATE PURCHASE CONTRACT



THIS IS AN [X] ADDENDUM [ ] COUNTEROFFER to that REAL ESTATE PURCHASE CONTRACT (the "REPC") with an Offer Reference Date of December 21, 2010     including all prior addenda and counteroffers, between Sierra Homes Construction Inc as Buyer, and Pacific Development LC      as Seller, regarding the Property located at See below for tax id's                        . The following terms are hereby incorporated as part of the REPC:

1.  This offer and its acceptance is subject to 3rd party approval by the Trustee involved in the bankruptcy case and Central Bank.

**BUYER AND SELLER AGREE THAT THE CONTRACT DEADLINES REFERENCED IN SECTION 24 OF THE REPC (CHECK APPLICABLE BOX): [X] REMAIN UNCHANGED [ ] ARE CHANGED AS FOLLOWS:** _____

_____

To the extent the terms of this ADDENDUM modify or conflict with any provisions of the REPC, including all prior addenda and counteroffers, these terms shall control. All other terms of the REPC, including all prior addenda and counteroffers, not modified by this ADDENDUM shall remain the same. [X] Seller [ ] Buyer shall have until 5 : ___ [ ] AM [X] PM Mountain Time on April 01, 2011      (Date), to accept the terms of this ADDENDUM in accordance with the provisions of Section 23 of the REPC. Unless so accepted, the offer as set forth in this ADDENDUM shall lapse.

_B Stocking_                         Mar-30-2011 | 06:38 PT
[ ] Buyer [X] Seller Signature        (Date)      (Time) [ ] Buyer [ ] Seller Signature       (Date)      (Time)

ACCEPTANCE/COUNTEROFFER/REJECTION
CHECK ONE:
[X] ACCEPTANCE: [X] Seller [ ] Buyer hereby accepts the terms of this ADDENDUM.
[ ] COUNTEROFFER: [ ] Seller [ ] Buyer presents as a counteroffer the terms of attached ADDENDUM NO. _____

_____  3-30-11
(Signature)        (Date)     (Time)       (Signature)              (Date)      (Time)

[ ] REJECTION: [ ] Seller [ ] Buyer rejects the foregoing ADDENDUM.

_____
(Signature)        (Date)     (Time)       (Signature)              (Date)      (Time)

THIS FORM APPROVED BY THE UTAH REAL ESTATE COMMISSION AND THE OFFICE OF THE UTAH ATTORNEY GENERAL, EFFECTIVE AUGUST 5, 2003. IT REPLACES AND SUPERSEDES ALL PREVIOUSLY APPROVED VERSIONS OF THIS FORM.



DocuSign Envelope ID: 52262CDD-BFB9-4400-875A-CBC3D5A0E265



Utah Association
of REALTORS®

REALTOR®

# BUYER DUE DILIGENCE CHECKLIST



EQUAL HOUSING
OPPORTUNITY

This is a legally binding document. If not understood, consult an attorney.

**THIS BUYER DUE DILIGENCE CHECKLIST** is provided by <u>Re/Max Results LLC - Provo</u> (the "Company"), including <u>Steven W Bond</u> (the "Agent") to <u>Sierra Homes Construction Inc</u> (the "Buyer") in connection with the purchase of any property, including (if known) the property located at: <u>Any and all lots purchased in Heritage Village Subdivision of Payson, Utah</u> (the "Property").

---

**NOTICE FROM COMPANY**

Buyer is advised that the Company and its agents are trained in the marketing of real estate. Neither the Company nor its agents are trained or licensed to provide Buyer with professional advice regarding the physical condition of any property or regarding legal or tax matters. The Company and its agents strongly recommend that in connection with any offer to acquire any property, Buyer retain the professional services of legal and/or tax advisors, property inspectors, surveyors, and other professionals to satisfy Buyer as to any and all aspects of the physical and legal condition of the property. BUYER IS ADVISED NOT TO RELY ON THE COMPANY, OR ON ANY AGENTS OF THE COMPANY, FOR A DETERMINATION REGARDING THE PHYSICAL OR LEGAL CONDITION OF THE PROPERTY. The following is a general listing of issues that Buyer should consider in evaluating any property. This is not intended to be a comprehensive list of all issues that may be relevant in Buyer's evaluation of a specific property, including any property listed above. This document is, however, intended to direct Buyer's attention to a number of issues that are commonly considered important in the evaluation of any property.

---

1. **BUILDING CODE/ZONING COMPLIANCE:** Buyer is advised to consult with local zoning officials to assure that Buyer's intended use of the Property (including, but not limited to, rental and business uses, construction of new improvements and/or the remodel of existing improvements) will comply with local zoning requirements and with any recorded restrictive covenants and conditions. Buyer should determine whether a certificate of occupancy has been issued for the Property and if such certificate is available for inspection. Buyer is also advised to make inquiry at the local building department to determine if building permits and final inspections were obtained for any remodel work at the Property, if applicable. Buyer acknowledges that the Company should not be relied upon for any determination as to any past, present or future building code or zoning restrictions or violations, or as to the suitability of the Property for Buyer's intended use.

2. **RENTAL OF PROPERTY:** If Buyer intends to use the Property as a rental, Buyer is advised to consult with local zoning officials and to review any applicable restrictive covenants to determine that rental of the Property is a legal use, and does not violate any restrictive covenants. Buyer is also advised to consult with local governmental authorities to determine whether a business or other license is required in order to use the Property as a rental. Buyer acknowledges that the Company should not be relied upon for any determination as to whether rental of the Property is a legal or permitted use.

3. **HAZARDOUS WASTE AND TOXIC SUBSTANCES:** Buyer is advised to consult with appropriate professionals regarding the possible existence of hazardous wastes and toxic substances on the Property, including, but not limited to, asbestos, radon gas, lead and lead-based paint, and contamination of the Property from the use, storing or manufacturing of any illegal substances including, methamphetamines. Buyer is advised that a variety of federal laws can place strict liability on property owners for hazardous waste management and cleanup of hazardous substances. Buyer is advised of Buyer's obligation to make appropriate inquiries ("due diligence") into past uses of the Property to ascertain the possible existence of hazardous wastes or toxic substances. Buyer acknowledges that the Company should not be relied upon for any determination as to the existence of any hazardous wastes or toxic substances.

4. **SURVEYING AND STAKING:** Buyer is advised that without an accurate survey of the Property, Buyer cannot be certain as to the boundaries of the Property, or that any improvements on the Property are not encroaching upon adjoining parcels of property, or that improvements located on adjoining parcels of property do not encroach onto the Property. Walls and fences may not correspond with legal boundary lines for the Property. Buyer acknowledges that the Company should not be relied upon for any determination as to the boundaries of the Property or of any encroachments within or over the actual boundaries of the Property.

5. **HOME WARRANTY PLANS:** Buyer acknowledges that Buyer has been advised by the Company of the availability of Home Warranty Plans which provide limited warranties for certain home appliances and certain components of the Property after Closing.

6. **FLOOD ZONE AND INSURANCE:** If the Property is located in a "Flood Zone" as set forth on the H.U.D. "Special Flood Zone Area" map, the mortgage lender may require that Buyer obtain and pay for flood insurance on the Property and its improvements.

7. **HOMEOWNERS INSURANCE:** Buyer is advised that certain properties, due to location, condition, and/or claims history, may be uninsurable, or may only be insurable at an increased cost. Buyer is also advised that Buyer's credit, insurance claims history, and other issues (such as specific kinds of pets), may be factors in determining the availability and cost of homeowners insurance. Buyer is advised to consult directly with insurance companies of Buyer's choice regarding the availability and costs of

Mar-30-2011  | 0-

Page 1 of 3                                                          Buyer's Initials [ *b* ] Date _____

homeowner's insurance for the Property.

**8. TITLE ISSUES/HOMEOWNER'S ASSOCIATION:** Buyer is advised that title insurance companies offer a variety of title insurance policies that provide different levels of coverage. Buyer is advised to carefully review with legal counsel and with the title insurer: (a) the available title insurance coverage; (b) the contents of any Commitment for Title Insurance on the Property; and (c) the contents of all documents affecting the Property that are a matter of public record, including, but not limited to, any restrictive covenants (CC&R's). If the Property is part of a Condominium or other Homeowners Association ("HOA"), Buyer is advised to consult directly with the HOA regarding all HOA matters that may affect the Property, including, but not limited to, existing and proposed budgets, financial statements, present and proposed assessments, dues, fees, reserve accounts, rules, and meeting minutes.

**9. PHYSICAL CONDITION:** Buyer is advised to consult with appropriate professionals regarding all physical aspects of the Property, including, but not limited to: built-in appliances; plumbing fixtures, lines, fittings and systems; heating, air conditioning systems and components; electrical wiring, systems, appliances and components; foundation; roof; structure; exterior surfaces (including stucco), exterior features and equipment; pool/spa systems and components; any diseased trees or other landscaping; and moisture seepage and damage from roof, foundation or windows. Buyer is advised not to rely on seller, the Company, or any agents of the Company for a determination regarding the physical condition of the Property.

**10. SQUARE FOOTAGE/ACREAGE:** If the square footage or acreage of the Property is of material concern to Buyer, Buyer is advised to verify the square footage or acreage through any independent sources or means deemed appropriate by Buyer. In the event the Company provides any numerical statements regarding these items, such statements are approximations only. Buyer is advised not to rely on seller, the Company, or any agents of the Company for a determination regarding the square footage or acreage of the Property.

**11. UTILITY SERVICES:** Buyer is advised to consult with appropriate professionals regarding the location of utility service lines and the availability and cost of all utility services for the Property including, but not limited to, sewer, natural gas, electricity, telephone, and cable TV. Buyer is advised that the Property may not be connected to public water and/or public sewer, and applicable fees may not have been paid. Septic tanks may need to be pumped. Leach fields may need to be inspected.

**12. WATER:** Buyer is advised to consult with the water service provider for the Property and with other appropriate professionals regarding the source, quality, and availability of water for the Property; and regarding all applicable fees and costs (including, without limitation, connection fees, stand-by fees and service fees), use and regulatory restrictions, and ownership of water rights and water system. Depending upon the location of the Property, the water service provider, and climate conditions, water service to the Property may be interrupted. A well and well system may require inspection. Buyer is further advised that, depending upon the location of the Property, State and local laws may impose specific requirements regarding the source, the capacity, and the quality of water that will service new plat or building permit applications. Such water-related laws may directly impact Buyer's ability to develop the Property and/or obtain a building permit for any improvements to the Property. Buyer is advised to consult directly with applicable State and local authorities, and with legal counsel, regarding the content and potential affect of such water-related laws.

**13. GEOLOGIC CONDITIONS:** Buyer is advised to consult with appropriate professionals regarding possible geologic conditions at or near the Property. Such geologic conditions may include, but are not limited to, soil and terrain stability, the existence of wetlands, drainage problems, and any building and/or zoning requirements relating to such geologic conditions.

**14. MOLD:** Buyer is advised to consult with appropriate professionals to determine the possible existence of mold in the Property. Water leaks and water damage to the Property may result in mold that may have adverse health affects. Additional information regarding mold is available through the EPA at: www.epa.gov.

**15. HOUSING COMPLIANCE:** Buyer is advised to consult with appropriate professionals regarding neighborhood or property conditions including, but not limited to: schools; proximity and adequacy of law enforcement; proximity to commercial, industrial, or agricultural activities; crime statistics; fire protection; other governmental services; existing and proposed transportation; construction and development; noise or odor from any source; and other nuisances, hazards, or circumstances. All properties will be shown without regard to race, color, religion, sex, national origin, handicap or familial status and any other requirements of federal and state fair housing laws.

**16. PROPERTY TAXES:** Buyer is also advised that, depending upon present use, the Property may be taxed as "Greenbelt". A purchase of the Property may change the Greenbelt status and the amount of property taxes assessed by the County. Such change in Greenbelt status may also result in liability for roll-back taxes. If Buyer has any questions regarding County property tax requirements, Buyer is advised to consult directly with the County Assessor's Office.

**17. INCOME TAX/LEGAL CONSEQUENCES:** Buyer is advised that this transaction has tax and legal consequences. Buyer is advised to consult with appropriate legal and tax advisors regarding this transaction.

Mar-30-2011  | 06:

Buyer's Initials [ *B* ] Date _____

DocuSign Envelope ID: 52262CDD-BFB9-4400-875A-CBC3D9405265

**RECEIPT AND ACKNOWLEDGEMENT OF BUYER**

I have carefully reviewed this BUYER DUE DILIGENCE CHECKLIST. I understand my right and the recommendation of the Company to consult with appropriate experts and professionals prior to, or as part of an offer to purchase any property. **I FURTHER UNDERSTAND THAT I HAVE THE RIGHT TO INCLUDE ANY OR ALL OF THE ABOVE ISSUES AS A CONDITION OF MY OFFER TO PURCHASE ANY PROPERTY.**

*B Stocking*                          Mar-30-2011 | 06:38 PT

| Buyer Signature | Date | Buyer Signature | Date |

This form is COPYRIGHTED by the UTAH ASSOCIATION OF REALTORS® for use solely by its members. Any unauthorized use, modification, copying or distribution without written consent is prohibited. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION. IF YOU DESIRE SPECIFIC LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

COPYRIGHT© UTAH ASSOCIATION OF REALTORS® – 1995 – REVISED 12.01.07 – ALL RIGHTS RESERVED          UAR FORM 12

Buyer's Initials [ *B* ] Date _____          Mar-30-2011 | 06

DocuSign Envelope ID: 52262CDD-BFB9-4400-875A-CBC30940E26E



Utah Association
of REALTORS®

**LIMITED AGENCY CONSENT AGREEMENT**



THIS IS A LEGALLY BINDING AGREEMENT – READ CAREFULLY BEFORE SIGNING

Name of Buyer(s): Sierra Homes Construction Inc          Name of Seller(s): Pacific Development LC          .
Agent Representing Buyer:                                 Agent Representing Seller:
Steven W Bond & Joshua Winn                              Steven W. Bond & Joshua Winn.
Name of Brokerage: Re/Max Results LLC - Provo                                    (the "Company").
The Buyer and the Seller are both presently using the services of the Company in a possible real estate transaction involving real
property located at: Heritage Village Subdivision          (referred to below as the "Property").

**AS THE BUYER AND THE SELLER PROCEED WITH THIS TRANSACTION IT IS IMPORTANT THAT THEY EACH UNDERSTAND THEIR PROFESSIONAL RELATIONSHIP WITH THE REAL ESTATE AGENT(S) AND WITH THE COMPANY. WHAT FOLLOWS IS A BRIEF BUT VERY IMPORTANT EXPLANATION OF THE NATURE OF AGENCY RELATIONSHIPS BETWEEN THE BUYER, THE SELLER, THE COMPANY, AND THE REAL ESTATE AGENTS WORKING IN THIS TRANSACTION.**

**1. Principal or Branch Broker.** Every real estate agent must affiliate with a real estate broker. The broker is referred to as a Principal Broker or a Branch Broker (if the brokerage has a branch office). The broker is responsible for operation of the brokerage and for the professional conduct of all agents.

**2. Right of Agents to Represent Seller and/or Buyer.** An agent may represent, through the brokerage, a seller who wants to sell property or a buyer who wants to buy property. On occasion, an agent will represent both seller and buyer in the same transaction. When an agent represents a seller, the agent is a "Seller's Agent"; when representing a buyer, the agent is a "Buyer's Agent"; and when representing both seller and buyer, the agent is a "Limited Agent".

**3. Seller's Agent.** A Seller's Agent works to assist the seller in locating a buyer and in negotiating a transaction suitable to the seller's specific needs. A Seller's Agent has fiduciary duties to the seller which include loyalty, full disclosure, confidentiality, diligence, obedience, reasonable care, and holding safe monies entrusted to the agent.

**4. Buyer's Agent.** A Buyer's Agent works to assist the buyer in locating and negotiating the acquisition of a property suitable to that buyer's specific needs. A Buyer's Agent has the same fiduciary duties to the buyer that the Seller's Agent has to the Seller.

**5. Limited Agent.** A Limited Agent represents both seller and buyer in the same transaction and works to assist in negotiating a mutually acceptable transaction. A Limited Agent has fiduciary duties to both seller and buyer. However, those duties are "limited" because the agent cannot provide to both parties undivided loyalty, full confidentiality and full disclosure of all information known to the agent. For this reason, a Limited Agent must remain neutral in the representation of a seller and buyer, and may not disclose to either party information likely to weaken the bargaining position of the other; such as, the highest price the buyer will pay or the lowest price the seller will accept. A Limited Agent must, however, disclose to both parties material information known to the Limited Agent regarding a defect in the Property and/or the ability of each party to fulfill agreed upon obligations, and must disclose information given to the Limited Agent in confidence, by either party, if the failure to disclose would be a material misrepresentation regarding the Property.

**6. In-House Sale.** If the buyer and the seller are both represented by one or more agents in the same brokerage, that transaction is commonly referred to as an "In-House Sale". Consequently, most In-House Sales involve limited agency because seller and buyer are represented by the same brokerage.

**7. Conflicts with the In-House Sale.** There are conflicts associated with an In-House Sale; for example, agents affiliated with the same brokerage discuss with each other the needs of their respective buyers or sellers. Such discussions could inadvertently compromise the confidentiality of information provided to those agents. For that reason, the Company has policies designed to protect the confidentiality of discussions between agents and access to confidential client and transaction files.

**8. Earnest Money Deposit.** Buyer and Seller agree that although the Company is authorized to act as a Limited Agent, Buyer and Seller authorize and direct the Principal Broker for the Company to hold and release the Earnest Money Deposit in accordance with the terms and conditions of the real estate purchase contract, or other written agreement entered into between the Buyer and the Seller.

Seller's Initials _____  Buyer's Initials ᖘ│·

DocuSign Envelope ID: 52262CDD-BFB9-4400-875A-CBC30940E26E

**9. Authorization for Limited Agency.** The Seller and Buyer are advised that they are not required to accept a limited agency situation in the Company and that Buyer and Seller are each entitled to be represented by their own agent. However, it is the business practice of the Company to participate in In-House Sales. By signing this agreement, Buyer and Seller consent to a limited agency within the Company as provided below: *(Check Applicable Box):*

[X] **A. One Agent.** The Buyer and the Seller consent to: <u>Steven Bond & Josh Winn</u>(name of Agent); and the Principal/ Branch Broker representing both the Buyer and the Seller as a Limited Agent as described above.

**B. Two Agents.** The Buyer and the Seller consent to: _____(Seller's Agent) continuing to
[ ] represent the Seller; and: _____(Buyer's Agent); continuing to represent the Buyer; and the Principal/Branch Broker acting as a Limited Agent as described above.

_B Stocking_        Mar-30-2011 | 06:38 PT

_____      _____      _____      _____
(Buyer)                   (Date)             (Seller)             (Date)

_____      _____      _____      3-30-11
(Buyer)                   (Date)             (Seller)             (Date)

ACCEPTED by the Company:

by: _____      3/28/2011
               (Signature of Authorized Agent or Broker)                    (Date)

This form is COPYRIGHTED by the UTAH ASSOCIATION OF REALTORS® for use solely by its members. Any unauthorized use, modification, copying or distribution without written consent is prohibited. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION. IF YOU DESIRE SPECIFIC LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

COPYRIGHT© UTAH ASSOCIATION OF REALTORS® – REVISED – 3.19.10 – ALL RIGHTS RESERVED            UAR FORM 7